# EXHIBIT A

## ACKNOWLEDGMENT OF ELECTRONIC SIGNATURE, LEASE DELIVERY and EMAIL OPT-IN

**Thank you for leasing using our online leasing system!**

By signing your Lease Agreement and any associated Lease Addenda and Agreements (if applicable) electronically, you acknowledge that your electronic signature constitutes a legal signature and you are explicitly agreeing that your electronic signature also indicates your initials in those sections of the Lease Agreement and any associated Lease Addenda and Agreements (if applicable) where initials are required and you agree to be bound by it for all documents executed.

This document serves as an acknowledgment that your lease will be delivered to you online through your account on leasing portal. For your convenience, all lease documents will be available to you throughout the leasing process and can be accessed by logging in to the account on the leasing portal that you established when you began the online leasing process. If you have forgotten your password, contact the Leasing Office to reset your account.

After Management executes your lease documents, the fully executed documents will be available to you through your account on the https://paywithbilt.com/BrookfieldProperties resident portal. You will receive an email invitation to sign up and join the online community, where you can manage your lease, pay your rent and enter service requests electronically.

You have the capability to email, digitally save or print your lease documents if you wish to have to have a paper copy for your records. If you would prefer that we deliver a copy of the lease documents to you in paper format, we will be more than happy to do so upon your written request to the Leasing Office.

This document also serves as an acknowledgment that you agree to opt-in to electronic communication via email using the email account provided during the application process. You have the ability to change your email address or to opt out of email communication via your account on the resident portal or upon your written request to the Management Office.

**Sustainability is a Core Value at Brookfield Properties Multifamily, LLC! ~Thank you for your support!**

Resident(s):

| | | | |
|---|---|---|---|
| _____ | _____ | _____ | _____ |
| | Date | | Date |
| _____ | _____ | _____ | _____ |
| | Date | | Date |
| _____ | _____ | _____ | _____ |
| | Date | | Date |
| _____ | _____ | | |
| | Date | | |

NORMAN PROPST
HEAD OF HOUSEHOLD
*Norman Propst*
SIGNED 6/12/2024 AT 7:08PM EDT

BPM ESIGNER
*Elizabeth Dixon*
SIGNED 6/14/2024 AT 4:13PM EDT

**GUILD**
1212 4th Street, SE
Washington, D.C. 20003
(202) 479-0602

## LEASE AGREEMENT

Lease Date: **06/17/2024**

Residents:

**Norman Propst**

Apartment Address:

**1346 4th Street SE #704**

Washington, D.C. 20003

Monthly Rent: $ **2673.00**

Security Deposit: $ **750.00**

Amenities Fee: $ **400.00**

Occupants:

**Norman Propst**

Rent Concession during current lease term:

$**0.00** one-time

$**0.00** per month

Administration Fee Concession:

$**400.00** one-time

Lease Term:

Commencement Date: **07/01/2024**

Expiration Date: **06/30/2025**

**Rental Application and Occupancy Notice:** Resident acknowledges that this Lease Agreement has been extended to Resident pursuant to a Rental Application submitted by Resident. The accuracy of the information contained in the Rental Application is a material condition of Landlord in extending this Lease to Resident. Resident warrants that all the information given by Resident in applying for this Lease is true and acknowledges that providing false information is a material breach of this Lease. Occupancy by more persons than set forth in this Lease or Rental Application shall constitute a material breach of this Lease.

**Binding Agreement:** This Lease constitutes a legally binding contract enforceable by law. Execution by the parties acknowledges full acceptance of all the terms and conditions contained herein. It is expressly understood and agreed by the parties that this Lease sets forth all promises, agreements, and understandings between the parties except as may be provided in supplemental addenda which are attached hereto and made part hereof by reference. No amendment, change or addition to this Lease shall be binding upon Landlord unless in writing and signed by the Landlord. There are no promises, agreements or understandings, either oral or written, between Landlord and Resident other than as set forth herein.

**Resident understands that the Section titled "Term" below contains provisions under which this Lease may automatically continue as month-to-month Lease after the end of the Lease term.**

Resident(s):

Brookfield Properties Multifamily, LLC
Agent for Owner, FC 1346, LLC

_____

_____

_____

_____

_____

By: _____
      Authorized Representative



NORMAN PROPST
HEAD OF HOUSEHOLD
SIGNED 6/17/2024 AT 12:33PM EDT

BPM ESIGNER
*Elizabeth Dixon*
SIGNED 6/17/2024 AT 4:42PM EDT

This Lease Agreement (the "Lease") is executed by and between Brookfield Properties Multifamily, LLC, as agent, (hereinafter "Landlord") and the persons named on Page 1 (collectively the "Resident") who agree to rent the apartment referenced on Page 1 (the "Premises") at Guild (the "Property") on the terms and conditions set forth herein. Occupancy is limited to Residents and the Occupants named on Page 1 for residential purposes only. Resident agrees that having any unauthorized occupants is a material breach of this Lease. Each Resident is jointly and severally liable for the payment of rent and the performance of all other terms of this Lease.

1. **Term:** The term of this Lease shall begin on the Commencement Date and shall end on the Expiration Date shown above. Upon the Expiration Date, this Lease shall automatically create a month-to-month tenancy unless: (a) The parties have renewed this Lease for an additional term; or (b) Resident has delivered, at least 60 days prior to the expiration of this Lease, a 60-day written notice to Landlord of Resident's intent to vacate the Premises by the Expiration Date. Resident acknowledges that renewal rates and month-to-month tenancy rates may result in an increase in the Rent and that Landlord has the right to increase the Rent by giving Resident written notice of Landlord's intention to do so at least 45 days prior to the Expiration Date. Failure by Resident to provide notice of intent to vacate or to elect any renewal rate that may be offered shall be deemed an election to continue this Lease on a month-to-month basis at the month-to-month rental rate set forth in the renewal offer. In the event that Resident shall remain in possession of the Premises after the Expiration Date, it shall be conclusively presumed that Resident has accepted the rental increase to the month-to-month rental rate set forth in the renewal offer. It is specifically understood that upon the Expiration Date, Landlord has no obligation to offer Resident a renewal on any term or condition.

2. **Rent:** The monthly rental payment (the "Rent") shall be the amount shown above. Rent is due in full in advance no later than the first day of each month. Payments must be made by checks, certified checks, cashier's checks or money orders. Landlord will not accept cash payments except on the date of eviction to be performed by the U.S. Marshall. Payment is due in the Management Office and should be made payable to "Brookfield Properties Multifamily, LLC," or may be paid or processed through a third-party processor BILT on their website https://www.biltrewards.com.

   When a check is provided as payment for Rent and/or Other Charges and Deposits, the check will be converted into an electronic transaction and processed through the Automated Clearing House (ACH) network. The receipt of the check will authorize Landlord to electronically debit the bank account on which the check was written. The check can clear as early as the day it is scanned and will not be received back from the financial institution.

   Unless prohibited by law, Landlord will apply payments made by Resident in the order of priority Landlord determines, regardless of any notations that Resident makes on checks, money orders or other forms of payment. If Resident is consistently and habitually late with rent payment, Landlord reserves the right to terminate this Lease in accordance with District of Columbia law.

3. **Late Fees and Other Charges:** Rent received after the due date will be considered delinquent. If the Rent is received after the fifth day of the month, the Resident agrees to pay a late fee of 5% of the monthly rent as additional Rent along with the delinquent Rent as permitted by District of Columbia law.

   **RESIDENT UNDERSTANDS THAT RENT IS DUE AND PAYABLE ON THE FIRST DAY OF EACH MONTH. RESIDENT HEREBY WAIVES ENTITLEMENT TO ANY NOTICE TO QUIT POSSESSION OF THE PREMISES BASED ON RESIDENT'S FAILURE TO PAY RENT. THIS WAIVER AUTHORIZES THE LANDLORD TO FILE SUIT FOR POSSESSION OF THE PREMISES BASED ON RESIDENT'S NON-PAYMENT OF RENT IMMEDIATELY AND WITHOUT GIVING RESIDENT THE BENEFIT OF A THIRTY (30) DAY WRITTEN NOTICE.**

   Resident agrees to promptly replace any check returned by a financial institution for any reason with a cashier's check, certified check, or money order. In the event that a Resident's check is returned by a financial institution for any reason, the Resident further agrees to pay a fee of $50 as additional rent plus any late fees, if applicable. If two checks are returned for non-payment during the tenancy, all future rental payments shall be payable by cashier's check, certified check, or money order only.

In the event the Premises is included in the Property's affordable housing program, any late fees or other charges shall be considered additional fees.

Upon thirty (30) days advance written notice or longer if required by state or local law, Landlord may increase Resident's payment for the monthly rent billing fee.

The acceptance by Landlord of any late or partial payment shall not change the due date or amount of any required payment in the future nor shall it relieve Resident from any obligation to pay the balance of the Rent and any applicable late fees or charges. Any past waivers of late fees or other charges by management shall not relieve Resident from any obligation to pay any applicable late fees or charges.

Resident has paid a non-refundable Amenities Fee as shown on Page 1 (not applicable for affordable housing program Residents). All other fees are shown on the Landlord's Schedule of Fees which is subject to change upon 30 days prior written notice.

4.  **Security Deposit:** Upon execution of this Lease, Resident has paid a security deposit (the "Deposit") as shown on Page 1.

    The Deposit is collected to assure Resident's compliance with the terms and conditions of this Lease. The Deposit shall be held, applied, and refunded as provided herein consistent with District of Columbia law. Resident acknowledges that the Deposit is not the "last month's rent" and cannot be applied by Resident towards Rent. If any portion of the Deposit is retained by Landlord, written notice to Resident detailing such retention shall be provided as mandated by District of Columbia law. If the Premises is rented by more than one person, Residents agree they will divide any refund among themselves. Landlord may pay the refund to any Resident identified on Page 1. It is specifically understood that any Deposit applied by Landlord towards Rent, damages, or other charges does not constitute a limit to Landlord's legal rights to all such sums due.

    Resident has the option but not an obligation to be present for a move-out inspection. Failure by Resident to attend an inspection of the Premises may constitute a waiver of objection and acceptance by Resident of Landlord's assessment of damages as permitted by District of Columbia law.

5.  **Utilities and Services:** Resident agrees to pay for all utilities and services, related deposits, and any charges or fees when they are due and as outlined in this Lease. Resident will pay separately for gas, water, sewer, stormwater/drainage, electricity, trash/recycling, pest control, utility billing fees and other items as outlined in separate addenda, Special Provisions or an amendment to this Lease. . Each utility service not provided at the expense of Landlord shall be provided to the Premises at the Resident's expense. Resident agrees to pay all utility charges assessed by utility companies (including utility deposits, new account fees, service fees and late fees) or third-party billing companies engaged by Landlord (or Landlord in the case of utilities billed to Resident by Landlord or its agent) in connection with the use of all utility services provided to the Premises which are separately metered and/or billed to Resident during the term of this Lease as such term may be extended or the period of occupancy of the Premises by Resident, whichever is longer. Unpaid utility charges assessed by the Landlord, either directly or through a third-party billing provider, shall be paid as additional rent no later than the due date of the next rental payment after receipt of the notice thereof. Furthermore, if Resident fails to pay all utility charges assessed by the utility companies in connection with the use of utility services for which Resident has herein agreed to pay, and the Landlord is billed by the utility company for these utility services, the Landlord may pay these utility charges to such utility company and recover the same from Resident as additional rent.

    Landlord reserves the right to change utility billing service providers at any time. If Landlord changes the utility billing service during Resident's tenancy, Resident will be given notice by Landlord. Landlord reserves the right to modify the method by which the utilities are furnished to the Premises or billed to Resident during the term of this Lease. In the event utility services provided to the Premises are separately metered and Resident's sub-meter is broken or does not transmit a meter reading, or if Landlord has not received bills from utility providers in time to prepare Resident's invoices, Landlord may estimate Resident's consumption.

If Resident's electricity is interrupted, Resident must use only battery- operated lighting not candles or open flames. Resident must not allow any   utilities (other than cable or Internet) to be cut off or  switched for any reason—including disconnection for not   paying your bills—until the Lease term or renewal period ends. If a utility is individually metered, it must be connected  in Resident's name and Resident must notify the provider of Resident's move-out date. If Resident delays getting service turned on in Resident's name by the Lease's Commencement Date or cause it to be transferred back into Landlord's name before Resident surrenders or abandons the Premises,   you'll be liable for the charge of $25 per billing period per utility bill that has not been transferred to Resident's name, plus the actual or estimated cost of the  utilities used while the utility should have been billed to Resident as additional rent.  If the Premises is individually metered and Resident changes the retail electric provider, Resident must give Landlord written notice.  Resident must pay all applicable provider fees, including any fees to change service back into Landlord's name after Resident moves out.

Resident acknowledges that all utility related charges assessed to Landlord may be used to calculate the amount charged to Resident.  Utility bills billed by Landlord or a third-party billing provider generally will be issued on a monthly basis, and may be an allocation of the prior month's bills, multiple months' bills if not yet billed, or an allocation of a rolling average of multiple months' prior bills.

Landlord and Resident agree that, when utility bills are determined using an allocation method or a flat rate, the exact amount of each utility consumed by the Resident (or in the Resident's Premises) that is billed to Resident by the Landlord or third-party billing provider and the exact amount of the same type of utility used in the common areas cannot be determined precisely, and that the allocation formulas described herein are reasonable estimates of such usage by the Resident and in such common areas.  Resident acknowledges that under the billing methods described herein, because it is an estimated allocation, Resident may be paying for utility usage in common areas or apartment units of other residents or underpaying for Resident's own usage.

In the event the Premises is included in the Property's affordable housing program, any utility charges or fees paid by Landlord on behalf of Resident or any utility fees assessed to Resident shall be considered additional charges.

Resident acknowledges that interruptions in the delivery of utilities do occur and Landlord shall not be liable for any loss or inconvenience caused by any interruption.  Resident acknowledges that the availability of continued resident-supplied utilities to the Premises is necessary for the maintenance and safety of the Property and other residents.  Suspension by the utility company of resident-paid utilities for non-payment shall constitute a material breach of this Lease.

Resident shall not tamper with, adjust or disconnect any utility system or device.  Violation of this provision is a material breach or default of this Lease and shall entitle Landlord to exercise all remedies available under District of Columbia law.

**6.** **Rent Concession**: If applicable, a rent concession(s) in the amount(s) shown on Page 1will be deducted from the Rent during the original lease term subject to the following conditions:  (a) The concession will not be applied during any month Rent is delinquent, and (b) If Resident cancels, breaches, or otherwise terminates this Lease prior to the Expiration Date, Landlord reserves the right to require repayment of any rent concession(s) taken.

**Other Concessions:**   If applicable, additional concession(s) such as the promotional waiver of fee(s) and/or monthly charge(s) during the original Lease term may require repayment if Resident cancels, breaches, or otherwise terminates this Lease prior to the Expiration.

**7.** **Early Termination Option**:  Resident is expected to remain a Resident for the entire term specified in this Lease.  If Resident fails to do so, Resident will be responsible to Landlord for any and all damages to the fullest extent permitted by law, including but not limited to rent due through the end of the Lease term, minus rents paid by a replacement tenant (if any).  This amount will vary depending upon how long it takes Landlord to find a replacement tenant. Therefore, this amount cannot be determined in advance and it is difficult to estimate.

To avoid this uncertainty, Resident may choose to exercise an early termination option.  Resident may choose to pay a flat fee in advance to terminate this Lease early, rather than remaining liable for rent due through the end of the Lease term. To exercise this option, Resident must deliver to Landlord:

(a)   A written notice stating that Resident has elected to exercise this option;
(b)   A lease cancellation fee equal to two month's rent;

(c) Rent and other amounts due through the accelerated termination date;

(d) Repayment of any rent concessions taken.

When Landlord has received the written notice <u>and</u> payment, and has signed the notice, the Lease Expiration Date will be amended.  The new Expiration (termination) Date will be the date specified in the notice which must be at least 30 days after the written election and payment are given to Landlord.   Exercise of the early termination option will affect <u>only</u> Resident's rent obligations after the accelerated termination date; Resident must comply with all other lease obligations.

The notice will not accelerate the Expiration Date if:

(a) Resident is in default under this Lease at the time that Resident gives notice of Resident's exercise of the option;

(b) Resident provides the notice unaccompanied by the fee above; or

(c) Resident does not properly exercise the early termination option by following the procedure specified above, but vacates the property before the Expiration Date specified in this Lease.

If Resident fails to vacate by the date set forth in Resident's notice, the notice shall be deemed void.  As permitted by District of Columbia law, Landlord shall have the right, at its option, to evict Resident relying upon the notice, or to continue with the tenancy in accordance with this Lease.  The Landlord shall retain all remedies for non-compliance with this Lease and the Resident shall be liable for any damages for non-compliance as permitted by District of Columbia law.

8. **Military Personnel:**

(a) Any member of the armed forces of the United States or a member of the National Guard serving on full-time duty or as a Civil Service technician with the National Guard may, through the procedure detailed in subsection B, terminate this Lease if the member (i) has received permanent change of station orders; (ii) has received temporary duty orders in excess of three months' duration; (iii) is discharged or released from active duty with the armed forces of the United States or from his/her full-time duty or technician status with the National Guard; or (iv) is ordered to report to government-supplied quarters resulting in the forfeiture of basic allowance for quarters.

(b) Residents who qualify to terminate a rental agreement pursuant to subsection A shall do so by serving on the Landlord a written notice of termination to be effective on a date stated therein, such date to be not less than 30 days after the first date on which the next rental payment is due and payable after the date on which the written notice is given. The termination date shall be no more than 60 days prior to the date of departure necessary to comply with the official orders or any supplemental instructions for interim training or duty prior to the transfer.  Prior to the termination date, Resident shall furnish Landlord with a copy of the official notification of the orders or a signed letter, confirming the orders, from the Resident's commanding officer.

(c) Delivery of written notice must be in a manner set forth in Paragraph 11 herein.  Oral notice is not sufficient.

9. **Default:**  It is specifically agreed that each obligation of this Lease is material and that any violation by Resident shall constitute a material breach of this Lease, in which event, Landlord may, at its option, enforce the performance of this Lease or give notice to Resident of its election to terminate this Lease as permitted by District of Columbia law.  If either Resident or Landlord fails to perform any obligation required by this Lease (including but not limited to the timely payment of Rent), the non-defaulting party may exercise all rights and remedies against the defaulting party.  If a collection agent is used, Resident agrees to pay collection costs in addition to other delinquent amounts as permitted by District of Columbia law.  Except as may be required by law, neither party shall forfeit or waive any existing or future right or remedy by pursuing any judicial action.  The parties expressly agree that the eviction by a court or otherwise of Resident for a breach of this Lease shall not release Resident from liability for payment for the balance of the term of this Lease.  If Landlord is granted possession of the Premises by a court of law, and Resident's possessions are removed and placed in storage, Resident agrees to pay for all moving and storage costs.

10. **Abandonment:**  If Resident vacates the Premises, leaving personal property within the Premises, Landlord has the unilateral right to dispose of said property as Landlord sees fit in accordance with District of Columbia law.

11. **Notices:** All notices provided herein shall be delivered to Landlord at the Management Office and to the Resident at the Premises. All notices shall be e-mailed, mailed, personally delivered or served as otherwise required by District of Columbia law. If there are multiple Residents at the Premises, notice from Landlord to one Resident shall constitute valid and binding delivery and service of notice to all Residents.

12. **Diplomats:** As a condition of Landlord entering into this Lease, any Resident who has been granted diplomatic immunity by the United States Government shall: (a) Provide a notarized statement signed by the Ambassador or head of the mission of the government to which Resident is attached, in which Resident's government agrees to waive the diplomatic immunity of Resident and indemnify Landlord for any of Resident's obligations arising under this Lease, including but not limited to, payment of rent, late charges, and court costs; *or* (b) Have the option to terminate this Lease in accordance with No. 7 above, Early Termination Option, except that the maximum required notice period for diplomats is 30 days; *or* (c) Remain liable for all lease terms through the Expiration Date.

13. **Parking/Vehicles:** Landlord reserves the right, but not the obligation, to assign or reassign specific parking spaces at the Property. Landlord may also designate specific areas for prospective residents or persons with disabilities. Residents, guests or invitees must park in designated parking areas. Unless the Property has assigned parking spaces, parking is on a first come, first serve, basis. Boats, trailers, and oversized vehicles are not permitted on the Property at any time unless Landlord has granted permission in writing. Prohibited vehicles, abandoned vehicles, inoperable vehicles, unlicensed vehicles, vehicles parked in a space assigned to another, and vehicles parked in a tow-away zone or otherwise impeding traffic may be towed away without notice at the vehicle owner's expense in accordance with District of Columbia law. Motorcycles are not permitted on the sidewalks, in landscaped areas, or in any building at any time. It is expressly understood that Landlord shall not be responsible for any theft or damage to vehicles parked on the Property. Residents, guests and invitees must adhere to posted speed limit signs and notices to vacate any parking areas for maintenance of facilities.

Resident understands that if reserved spaces and/or garage parking are available at the Property, they are assigned on a first come, first serve basis. Landlord may require the execution of a separate parking agreement that may entail an additional fee(s). Landlord makes no representation that sufficient reserved parking or garage space will be available at any particular time.

14. **Storage:** Resident understands that if supplemental storage is available at this Property, it is assigned on a first come, first serve basis. Landlord may require the execution of a storage agreement that may entail an additional fee(s). Landlord makes no representation that sufficient supplemental storage space will be available at any particular time.

15. **Right of Entry:** Landlord may enter the Premises to inspect the Premises, make necessary repairs or services (including but not limited to structural/system improvements), verify occupancy, or show Premises to prospective purchasers or mortgagees. Landlord may also allow a licensed exterminator to enter the Premises for the purpose of pest control. Except in the case of emergency or if it is impractical to do so, Landlord shall give Resident at least 48 hours notice of Landlord's intent to enter the Premises. Upon notice by either party of intent to terminate tenancy, Resident agrees to permit Landlord to show the Premises to prospective residents upon 48 hours notice. Landlord may also enter if the Premises appears to have been abandoned by Resident or as otherwise permitted by District of Columbia law.

16. **Alteration of Premises:** Resident may not alter or repair the interior or exterior of the Premises in any manner without Landlord's prior written consent. Resident is liable for the cost to repair any such alterations or repairs made by Resident. Alteration includes but is not limited to painting, wallpaper, or modification of electrical appliances. Commercially available analog or digital TV antennas or antenna less than 39.37 inches in diameter or length may be installed for direct broadcast satellite or fixed wireless signals via satellite so long as installed safely, securely, and entirely within the Resident's Premises and not in any common areas. Resident must notify Landlord no later than 30 days after installation, permit an inspection, and sign a Satellite Dish Addendum. Waterbeds and aquariums in excess of 35 gallons are not permitted without providing Landlord with acceptable liability insurance.

Locks shall not be changed, altered or replaced nor shall new locks be added by Resident without the written permission of Landlord.  Any locks so permitted to be installed shall become the property of Landlord and Resident must promptly provide a duplicated key to Landlord.

17. **Maintenance of Premises:** Resident has examined the Premises and is satisfied with its physical condition, order, and repair.  Within three days of the Commencement Date, Resident shall complete and return to Landlord an Apartment Inspection Report detailing any deficiencies noted with the Premises.  Failure to return the Apartment Inspection Report shall be deemed an acceptance of the Premises without exception. Any subsequent damage or deficiency noted by Landlord upon move-out shall be charged to Resident.  Upon termination or expiration of this Lease, Resident agrees to surrender the Premises to Landlord in the same condition as it was delivered at the commencement of tenancy, less ordinary wear and tear.

Resident shall maintain the Premises in a neat, clean and undamaged condition and, in particular, shall comply with all applicable provisions of building codes regarding public health and safety.  Resident agrees to (a) dispose of all ashes, rubbish, garbage, and waste in a clean and safe manner; (b) use all plumbing, electrical, sanitary, heating, ventilating, air conditioning facilities and appliances in a safe and reasonable manner; and (c) not deface, damage, or otherwise harm any part of the Premises. Resident agrees to reimburse Landlord promptly in the amount of any loss, property damage or cost of repairs or service caused by negligence or improper use of the Premises by Resident.  Resident has inspected and tested all smoke/carbon monoxide detectors and determined them to be in workable condition.  Resident shall be responsible for testing smoke/carbon monoxide detectors on a regular basis, and replacing batteries, unless hard-wired.  Resident shall not tamper with, adjust or disconnect any smoke/carbon monoxide detectors.  Violation of this provision is a material breach or default of this Lease and shall entitle Landlord to exercise all remedies available under District of Columbia law.  Resident shall notify Landlord of all repair needs promptly.  Resident shall be liable for any damages resulting from Resident's failure to promptly notify Landlord.

**Pests:**  Resident acknowledges that it is necessary for Resident to keep the Premises clean and take other measures to prevent infestation by pests, including but not limited to, insects, birds, rodents, and other vermin. Resident agrees to keep the Premises in a clean and sanitary condition to ensure a healthy and safe environment for all residents and occupants, as well as to prevent infestation by insects, birds, rodents, and other vermin.  To prevent such infestation, Resident needs to limit food and water sources for insects, birds, rodents, and other vermin.  Resident agrees to: (a) promptly and regularly dispose of garbage, trash, and debris.  Resident agrees not to accumulate excessive amounts of trash inside the Premises or on the Property and use a garbage container with a lid; (b) not leave food out and store food in airtight containers; (c) not leave out dirty dishes, pots, pans, utensils, etc.; (d) thoroughly rinse garbage disposal after use and cover with lid; (e) not leave standing water on floors, countertops or anywhere in the Premises; (f) reduce clutter to eliminate potential places for insects or rodents to hide; (g) vacuum luggage after traveling because many pests tend to travel; (h) not feed wild birds or other wild animals.  They may become pests by leaving toxic droppings on balconies, etc. (i) **immediately** notify Landlord of any infestations by insects, birds, rodents, or other vermin in the Premises or in any other areas of the Property; (j) **immediately** notify Landlord of any plumbing and other water leaks or other moisture problems; (k) **immediately** notify Landlord of any holes or cracks in the Premises; (l) comply with any and all instructions given by Landlord and by extermination,  fumigation, or pest control service providers hired by Landlord; and (m) as necessary, discard household items that cause, or contribute to, pest infestation.

If Resident has caused any insect/bird/rodent/vermin infestation by insufficient housekeeping or has aggravated it, Landlord may charge Resident for reasonable extermination, treatment, and/or fumigation costs as permitted by federal/District of Columbia laws.  Resident agrees to permit Landlord to periodically inspect the Premises on an "as needed" basis after reasonable notice to Resident under District of Columbia laws for recurring extermination or fumigation services and to verify that Resident has cured insufficient housekeeping and/or pest infestation.  **Resident agrees not to apply any pesticides without receiving Landlord's prior written consent.**

As required by any state or local law, Landlord will notify Resident of extermination or fumigation or pest control services with 48 hours advance written notice unless an emergency requires immediate treatment or fumigation.  As permitted by federal/District of Columbia laws, Resident shall be responsible for damages to the Premises and to Resident's property resulting from Resident's failure to maintain sanitary Premises, unauthorized use of pesticides, and/or failure to comply with instructions from extermination or fumigation or

pest control service providers or Landlord. A breach of any of the above-described obligations shall constitute a material breach of this Lease.

Resident, Occupants, and guests must cooperate and not interfere with pest control inspections or treatments. Resident is responsible for and must, at Resident's expense, have Resident's and Occupant's personal property, furniture, clothing, and possessions treated according to accepted treatment methods established by Landlord. Resident will follow all directions to clean and treat the Premises and property that are infested. Resident will remove or destroy personal property that cannot be treated or cleaned as close as possible to the time Landlord or pest control service providers treated the Premises.

**Mold:** Resident acknowledges that it is necessary for Resident to provide appropriate climate control and take other measures to reduce and prevent mold and mildew from accumulating in the Premises. Resident agrees to: (a) clean and dust the Premises on a regular basis and to remove visible moisture accumulation on windows, walls and other surfaces as soon as reasonably possible; (b) not block or cover any of the heating, ventilation or air-conditioning ducts in the Premises; (c) maintain a temperature between 50 to 80 degrees Fahrenheit whenever possible; (d) allow an exchange of air and permit sunlight to enter and air out your home when weather is warm and dry. Run the fan on your furnace to help circulate fresh air; (e) keep windows and doors closed in damp, humid, or rainy weather; (f) vacuum and mop on a regular basis to remove household dirt and debris that contribute to mold growth. A vacuum cleaner with a HEPA filter will help remove mold spores; (g) clean and dry the walls and floors around the sink, bathtub, shower, toilet, windows and patio doors using a common household disinfecting cleaner. On a regular basis, wipe down and dry areas where moisture sometimes accumulates (such as countertops, windows, and windowsills, etc.); (h) use the bathroom fan when bathing or showering and allow the fan to run until all excess moisture has been vented from the bathroom; (i) use the exhaust fan in your kitchen when cooking or while running the dishwasher and allow the fan to run until all excess moisture has been vented from the kitchen; (j) clean the lint filter after each use of the dryer and promptly report any damage to the vent connection; (k) wipe dry any condensation that may form in closets; (l) limit houseplants to a reasonable number to limit excess humidity and limit molds that could grow on the soil surface. Avoid overwatering; (m) blot dry any spills on your carpeting; (n) not overfill closets or storage areas. Overcrowding restricts airflow; (o) not block kitchen or bathroom exhaust fans/vents.

Resident agrees to immediately report to the Management Office (a) any leak, water damages, or excessive moisture in the Premises, storage room(s), garage, or other common area; (b) any areas of visible mold or mildew "like" growth that cannot be removed by simply applying a common household cleaner and wiping the area; (c) any failure or malfunction in the heating, ventilation, air conditioning, or laundry systems in the Premises; (d) any doors or windows that do not open or close properly; and (e) musty or moldy odors. Resident further agrees that Resident shall be responsible for damage to the Premises and Resident's property as well as injury to Resident and Occupants resulting from Resident's failure to comply with the terms of this clause, to the maximum extent permitted by District of Columbia law. A default under this clause shall constitute a material breach of this Lease.

If damage to the Premises and/or other areas of the Property from fire or casualty is a result of Resident's negligence, recklessness, or intentional or deliberate actions, Resident will be responsible for payment of the repair and damages to restore the Premises and/or other areas of the Property damaged to its original condition. Failure to pay such amount constitutes material breach of this Lease and shall entitle Landlord to exercise all remedies available under District of Columbia law.

18. **Liens:** Resident shall not have the right or authority to encumber the Premises or to permit any person to claim or assert any lien for the improvement or repair of the Premises made by Resident. Resident shall notify all parties performing work on the Premises at Resident's expense that this Lease does not allow any such liens to attach to Landlord's interest. In the event Resident does cause any liens to attach to the Property, such occurrence shall be a material breach of the Lease, and Resident shall be responsible for payment of any costs incurred by Landlord (including attorney's fees) to cause the removal of such.

19. **Violating Laws and Causing Disturbances:** Resident, Occupant(s), and Resident's guests will not commit any acts or use the Premises or common areas in such a way as to (a) violate any law or ordinance, including laws prohibiting the use, possession or sale of illegal drugs or drug paraphernalia; (b) commit property damage; (c) engaging in or threatening violence; (d) disrupting or interfering with Landlord's business operations; (e) possessing a weapon prohibited by state or federal law; (f) discharging a firearm, or displaying or possessing a

gun, knife, or other weapon in the Premises or any common area; (g) bringing hazardous materials into the Premises or on/across any common area; or (h) annoy, disturb, inconvenience, threaten, or interfere with the quiet enjoyment and peace and quiet of any other resident, management staff, contractors or vendors. Engaging in any of the foregoing conduct by Resident, or any of Resident's family members, guests or invitees, shall constitute a material breach of this Lease.

As allowed by federal, state, and local laws, Landlord, upon issuance of duly served tenancy termination and/or eviction notices, may terminate Resident's tenancy for criminal activity by any Resident, Occupant, guest, or any other person under Resident's control.  Criminal activity includes, but is not limited to, felonies and misdemeanors.  Landlord may evict the household and/or otherwise terminate this Lease regardless of whether there has been an arrest or a conviction for such criminal activity, in accordance with District of Columbia law.

As allowed by federal, state, and local laws, if a Resident or Occupant is listed on a state/county/city/local sex offender registry or it otherwise comes to Landlord's attention that a Resident or Occupant is a registered sex offender, Landlord may evict the household and/or otherwise terminate this Lease after duly serving eviction or tenancy termination notices as required by District of Columbia law.

A single violation of the Residential Drug Related Evictions Chapter of the District of Columbia Real Property Code shall subject Resident to a five (5) day notice for possession for violation of the drug haven statute. Moreover, Landlord may recover possession of the Premises where a court of competent jurisdiction has determined that Resident, or a person occupying the Premises with or in addition to Resident, has performed an illegal act within the Premises. Landlord shall serve on Resident a 30-day notice to vacate.

**Use of Marijuana:**  The use, possession, manufacture, sale or distribution of marijuana by any Resident, household member, guest, or any other person under Resident's control, for any purpose, is prohibited on the premises and project grounds and shall be a material breach of this Lease.

20. **Landlord's Obligation:** At all times during the term of this Lease, Landlord shall maintain the Property and the mechanical devices within the Premises in a clean, safe, and workable condition as required by District of Columbia law.  Resident shall report all needed repairs to Landlord at the Management Office or through the resident portal.  Repairs shall be made within a reasonable time following notification during normal business hours.  Emergency maintenance service is available after hours to handle requests of a true emergency nature that cannot wait until normal business hours.  If such repairs are of an emergency nature, the repairs shall be addressed within a reasonable time under the circumstances.  Resident acknowledges that mechanical items do break and that repairs are an ongoing process at any rental property.  It is expressly agreed, if Landlord is diligent in its effort to effect repairs, temporary suspension of services within the Premises and on the Property shall not constitute a basis for the termination of this Lease or abatement of Rent.  As provided by law, Resident shall not make any repairs or hire third parties to make repairs without the prior written consent of Landlord.

21. **Landlord's Liability:** Landlord shall not be liable for any injury to any person or damage or loss to any property of Resident, any Occupant, guest or invitee, unless due to the specific negligence of Landlord. Except in the event that the Premises is included in the Property's affordable housing program, Resident shall secure insurance to protect Resident and Landlord against liability, property damage, fire and casualty losses with a combined single limit per occurrence for liability coverage in the amount of $100,000.00 for personal injury/death and destruction/damage to property.  Failure to secure and maintain said insurance shall be considered a material breach of the terms of this Lease, which may, at Landlord's election, result in the termination of Resident's tenancy by Landlord and eviction from the Premises.  Landlord will charge Resident a $50 fee per month which shall be due as additional rent for any month Resident's insurance has lapsed and is not in effect.  The fee imposed for failing to maintain insurance under this Lease is not a limit on Resident's liability for personal injury/death and destruction/damage to property as specified herein.  Resident will be strictly liable for the entire amount of any injury to the person or property.  If the Premises is included in the Property's affordable housing program, Landlord strongly recommends that Resident secure insurance to protect Landlord against liability, property damage, and casualty losses.  Unless inconsistent with District of Columbia law, Landlord shall not be liable for the loss or damage to Resident's personal property from theft, vandalism, fire, water damage, smoke, Landlord supplied appliances, operating systems, interruption of utility services, or other cause.  If for any reason Landlord agrees to render services such as handling furniture, cleaning, delivering or accepting packages, or providing access, Resident specifically agrees to hold Landlord

harmless from all liability in connection with such services.  Resident waives any assignment of subrogation rights to Resident's insurer.  Resident also agrees to indemnify Landlord and hold it harmless from any and all claims of Resident's insurer, including a reimbursement of all Landlord's defense costs and attorney fees.

In the event of damage to the Premises or Property through fire, water, or other casualty, which are of sufficient nature that occupancy cannot be reasonably continued, Landlord may offer Resident alternative premises if such space is available.  Resident may, at his/her option, accept the alternative premises, in which event the Lease terms, including but not limited to the timely payment of rent, shall continue in full force and effect.  The Resident shall not occupy any Apartment that the Landlord has decided cannot be occupied due to damage Notwithstanding other provisions in this Lease to the contrary, in the event that no alternative premises are available or Resident elects not to accept alternative premises offered by the Landlord, this Lease may be terminated by either the Landlord or the Resident in compliance with state law or local ordinance.  In this event, neither party shall have any further obligation to each other.  Any rent paid for the month shall be prorated and the unearned portion refunded to Resident. This Resident's right to terminate this Lease will not apply if the damage was caused by Resident, Occupant(s) or Resident's guest(s) and Resident shall be liable for the costs to remediate the Apartment and/or Property for damage due to fire, water or other casualty.

22. **Pets:**  No pets are permitted on the Property at any time except by prior written consent of Landlord.  Should Landlord agree to permit a pet, both parties must sign a separate addendum, which may entail a separate deposit, additional fee, and/or rent.   The keeping of a pet for any duration without written consent shall constitute a material breach of this Lease.  Such breach may result in the termination of Resident's tenancy by Landlord and eviction from the Premises.

23. **Acknowledgment of Security Policy:** Resident acknowledges that neither Owner nor Landlord has made any representations, written or oral, concerning the safety of the community or the effectiveness or operability of any security devices or security measures.

Resident acknowledges that neither Owner nor Landlord warrants or guarantees the safety or security of Residents, Occupants, and their guests or invitees against the criminal or wrongful acts of third parties.  Each Resident, Occupant, guest, and invitee is responsible for protecting his or her own person and property.

Resident acknowledges that security devices or measures may fail or be thwarted by criminals or by electrical or mechanical malfunction.  Therefore, Resident acknowledges that they should not rely on such devices or measures and should protect themselves and their property as if these devices or measures did not exist.

Resident acknowledges receipt of a pamphlet entitled *Residential Safety*.

24. **Assignment:**  Resident shall not sublet, transfer, or assign this Lease, the Premises, or any part thereof, without Landlord's prior written consent, which the Landlord may withhold in its sole discretion.  If Landlord agrees to an assignment, the assignee(s) must apply for residency and meet the resident selection criteria.  No assignment shall be valid hereunder unless in writing with Landlord's prior written consent.

Sub-letting or "re-renting" the Premises, or any part thereof, to a third party through the use of any online community marketplace website, social media venue, or any other medium of communication is explicitly prohibited.  Examples of such community marketplace and social media websites and applications used to facilitate these prohibited actions include but are not limited to: Airbnb.com, Craigslist.org, Couchsurfing.com, Homeaway.com, Tripadvisor.com, Sublet.com, HomeExchange.com, Facebook, Myspace, Twitter, etc.  Should Landlord agree to permit Resident to home share, Resident must receive Landlord's prior written consent by executing the appropriate Addendum.  Violation of this provision subjects Resident to a $500 fee for each daily breach that the Premises is sub-let in violation of this paragraph and for actual damages arising as a result of each breach, as the Landlord in its sole discretion shall determine.  This fee or the actual damages shall be deemed additional rent.

Arrangements/agreements of any kind made between Resident and other third parties under the conditions described above preclude those third parties from being considered a "Guest" as described in Paragraph 25 of this Lease, and thus are precluded from enjoying the rules, conditions, and benefits described in Paragraph 25 of this Lease.  No such arrangements/agreements shall be valid and are a material breach of this Lease.

25. **Guests:** Occupancy by guests for more than fourteen (14) days within any 30-day period is prohibited without Landlord's written consent and will be construed as a breach of this Lease. Resident acknowledges that Resident shall be held responsible for the actions of Resident's guests that violate this Lease or the Rules and Regulations. Resident acknowledges that the Rules and Regulations pertaining to visitors are material to this Lease and that violations shall be considered a material breach of this Lease and may result in termination of Resident's tenancy.

Unless inconsistent with District of Columbia law, Landlord has the right to bar individuals from the Premises. Resident must inform guests of all Lease provisions regarding use of the Premises and all rules and regulations. Guests in violation of these provisions or rules and regulations may receive a barred notice and placed on a barred list by Landlord. If Resident or Occupant allows a known barred person onto the Premises, it will be considered a material breach of this Lease and may result in eviction from the Premises in compliance with District of Columbia law.

26. **Rules and Regulations:** Resident agrees to comply with all Rules and Regulations governing the Property whether now in effect or hereinafter promulgated and delivered to Resident by Landlord. Resident acknowledges receipt of the Rules and Regulations in effect as of the date hereof, which are attached to and incorporated into this Lease. Failure to comply with the aforementioned rules and regulations shall be considered a material breach of this Lease.

27. **Recreational/Fitness Facilities:** If Landlord maintains recreational and/or fitness facilities, Resident agrees to strictly comply with all Rules and Regulations as issued by Landlord, whether now in effect or hereinafter promulgated and delivered to Resident. Landlord reserves the right to revoke or suspend the use of any recreational and/or fitness facilities due to the violation of said Rules and Regulations. Resident, Occupant(s), and Resident's guests shall assume the risk of all use of any of Landlord's recreational and/or fitness facilities. Landlord shall not be responsible for any injuries, damages or losses sustained by Resident, Occupant(s), or Resident's guests. Landlord reserves the right to suspend the use of any recreational and/or fitness facilities for the purpose of repairs or modifications. Such action shall not form a basis for a claim for damages, for the termination of this Lease, or for a reduction or abatement of the Rent herein.

28. **Entrance Access Devices:** All devices (access cards, codes, keys, etc.) issued to Resident for access to common areas, garages, apartments, etc. are the property of Landlord to be utilized solely by and held in possession of the Resident and authorized Occupants. These devices may be subject to additional Rules and Regulations as issued by Landlord. If Resident provides an entrance device to any person without authorization, other than a key to Resident's individual rental apartment (the Premises), it shall constitute a material breach of this Lease and Landlord may terminate tenancy.

29. **Holdover Tenancies:** A holdover tenancy will be created if the Resident fails to turn in keys and vacate the Premises on or before the written notice of intent to vacate date and Resident will be assessed an amount in accordance with District of Columbia law. If Resident fails to vacate on or before the date set forth in any written notice of intent to vacate given by Resident, Resident shall be liable for liquidated damages as permitted by District of Columbia law.

30. **Delivery of Premises:** In the event Landlord is not able, through no fault of its own, to deliver the Premises to Resident at the time called for herein, the rent shall be abated on a pro-rata basis until such time as occupancy can be obtained. Any abatement shall constitute full settlement of all damages caused by such delay or the Landlord, at its election, shall be allowed reasonable time to deliver possession of the Premises. If Landlord cannot deliver such possession within 30 days from the beginning of said term, either Landlord or Resident may terminate this Lease by giving written notice to the other, and any payment(s) made under this Lease shall be refunded.

31. **Waiver:** The waiver of one breach of any term, condition, covenant, obligation, or agreement of this Lease shall not be considered to be a waiver of that or any other term, condition, covenant, obligation, or agreement or of any subsequent breach thereof.

32. **Disclosure:** Brookfield Properties Multifamily, LLC, 127 Public Square, Suite 2500, Cleveland, Ohio 44114, is authorized to manage the Premises and Property, receive rents, execute leases, enforce leases, and receive legal notices, as agent for the owner of the Property.

33. **Change in Ownership/Subordination:** Resident hereby agrees that Resident will recognize Brookfield Properties Multifamily, LLC, as his/her Landlord under this Lease and shall attorn to any person succeeding to the interest of Landlord in respect of the land and the buildings on or in which the Premises is contained upon any foreclosure of any deed of trust upon such land or buildings or upon the execution of any deed in lieu of such foreclosure in respect of such deed of trust. If requested, Resident shall execute and deliver an instrument or instruments confirming its attornment as provided for herein; provided, however, that no such beneficiary or successor-in-interest shall be bound by any payment of rent for more than one (1) month in advance, or any amendment or modifications of this Lease made without the express written consent of such beneficiary.

34. **Severability:** If any section, subsection, clause, phrase or covenant of this Lease is determined to be unconscionable, unenforceable, or in violation of any applicable law or regulation, such provision shall become null and void. The parties expressly understand that the invalidation of any provision herein shall not affect the remainder of this Lease which shall remain in full force and effect.

35. **Additional Provisions:**

A violation of any of these provisions shall be considered a material breach of the Lease, which may, at Landlord's election, result in the termination of Resident's tenancy by the Landlord and eviction from the Premises in accordance with state/local law.

**Choice of Law; Choice of Venue:** The negotiation, execution, performance, termination, interpretation and construction of this Lease are governed by the laws of the District of Columbia. If Landlord or Resident brings a lawsuit or any other action relating to this Lease, Landlord or Resident agree to file its lawsuit in the District of Columbia. Landlord and Resident agree to the exclusive jurisdiction of this court and consent to venue in that court. Resident agrees that this Lease will not limit or waive any rights of the Landlord or Resident under applicable United States federal or District of Columbia.

**Rent Control Exemption:** RESIDENT ACKNOWLEDGES THAT, PRIOR TO EXECUTION OF THIS LEASE BY RESIDENT, LANDLORD HAS ADVISED RESIDENT THAT, PURSUANT TO SECTION 205 OF THE DISTRICT OF COLUMBIA RENTAL HOUSING ACT OF 1985, RENT INCREASES FOR THE PREMISES ARE NOT REGULATED BY THE RENT STABILIZATION PROGRAM (i.e., RENT CONTROL PROGRAM) OF THAT ACT, AND THAT THE PREMISES ARE EXEMPT FROM SAID RENT STABILIZATION PROGRAM. A COPY OF THE EXEMPTION FORM DATE STAMPED AS RECEIVED BY THE RENTAL ACCOMMODATIONS DIVISION IS DELIVERED TO RESIDENT.

**Newly created rental unit added to an existing structure or Housing Accommodation and covered by a Certificate of Occupancy for use issued after January 1, 1980.**

**Housing Regulations:** Resident has received the following provisions of the Housing Regulations of the District of Columbia which are incorporated into this Lease Agreement: Chapter 1, Sections 101 (Civil Enforcement Policy) and 106 (Notification of Tenants Concerning Violations), and Chapter 3 (Landlord and Tenant).

**Rent Increases:** Rent increases for apartments in the project are not regulated under Chapter 27 of Title 42 of the DC Code, and Resident may contact the Issuer at the below listed address regarding any complaints:

District of Columbia Housing Finance Agency
815 Florida Avenue, NW
Washington, DC 20001
Attn: Director of Compliance and Asset Management
Phone: (202) 777-1600

**Condominium Status:** The Resident acknowledges that, prior to entering into any lease, and prior to any occupancy, of the Premises leased to Resident under this Lease, Resident was and is hereby advised that Landlord has filed and registered with the District of Columbia Department of Housing and Community

Development ("DHCD") an Application for Condominium Registration and Public Offering Statement for a condominium regime known as Guild Residential Condominium (the "Condominium") pursuant to the District of Columbia Condominium Act, Title 42, Chapter 19, §42-1901.01 et seq., District of Columbia Code (2010 Repl. Vol., as amended), and that the Premises and this Lease are subject to such condominium registration pursuant to that certain notice of filing issued by DHCD. Resident further acknowledges that the Landlord may record various documents to subject the Property to the Condominium at any time and without further notice to Resident. The Premises and this Lease will become subject to a certain Condominium Declaration (the "Condominium Declaration"), Condominium Bylaws (the "Condominium Bylaws"), and Condominium Plat & Plans (the "Plat & Plans") for the Condominium (collectively, the "Condominium Instruments") if those Condominium Instruments are recorded. The Condominium Instruments may, at the Landlord's election at any time, be recorded among the Land Records of the Office of the Recorder of Deeds of the District of Columbia and/or with the Office of the District of Columbia Surveyor, as applicable. The Premises and this Lease shall be subject to such rules and regulations as may in the future be adopted from time to time by or for the Condominium ("Condominium Rules and Regulations"). Resident agrees that the tenancy created hereunder is subject to the following additional provisions:

(a)  Upon the recording of the Condominium Instruments and notice of such to the Resident, Resident affirmatively agrees to abide by all of the obligations, covenants and restrictions imposed upon occupants by said Condominium Declaration, Condominium Bylaws and Plat & Plans (except for the payment of assessments and other monetary obligations required of unit owners) and the Condominium Rules and Regulations, all as may be amended from time to time. Any violation by Resident of said obligations, covenants, restrictions, and Condominium Rules and Regulations shall be deemed a breach of this Lease. Resident hereby permits the Landlord and any successor to the Landlord and their agents to proceed directly against Resident for any breach by Resident of any of said obligations, covenants, restrictions, and Condominium Rules and Regulations including, without limitation, the power to terminate this Lease and to bring summary proceedings to evict Resident in the name of the Landlord, upon ten (10) days prior written notice to Resident.

(b)  Resident hereby agrees to indemnify Landlord and the Condominium for any loss, cost, damage or expense incurred by Landlord or the Condominium directly or indirectly as a result of Resident's breach of its obligation as set forth in this Section 35.

**Nonjury Class Action Waiver:**  Resident agrees that Resident will not participate in any nonjury class action claims against Landlord or Landlord's representatives.  Resident must file any claim against us individually, and Resident expressly waives Resident's ability to bring, represent, join or otherwise maintain a nonjury class action, collective action or similar proceeding against Landlord in any forum.

RESIDENT UNDERSTANDS THAT, WITHOUT THIS WAIVER, RESIDENT COULD BE A PARTY IN A NONJURY CLASS ACTION LAWSUIT.  BY SIGNING THIS LEASE, RESIDENT ACCEPTS THIS WAIVER AND CHOOSES TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY.  THE PROVISIONS OF THIS PARAGRAPH 35 – ADDITIONAL PROVISIONS – NONJURY CLASS ACTION WAIVER SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE.

**Executive Order**:  Resident warrants and represents to Landlord that Resident is not, and shall not become, a person or entity with whom Landlord is restricted from doing business with under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of Treasury (including, but not limited to, those named on OFAC's Specially Designated and Blocked Persons list) or under any statute, executive order (including, but not limited to, the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism), or other governmental action and is not and shall not engage in any dealings or transaction or be otherwise associated with such persons or entities.

**Photographs and Videos:**  Resident consents to Landlord's use of photographs and/or video images of the Resident and the Premises, including those taken at functions or events sponsored by the Community, for the purpose of advertising the Community or other similar communities owned or operated by Landlord.  Landlord may use these images in advertising, websites, and social networking sites such as Facebook for marketing and promotional purposes.  Resident consents to the publication of these images and waives any claims against Landlord for use of such images.

**Smoke Free Property:** The parties want to reduce or eliminate (a) the irritation and known health effects of secondhand smoke; (b) the increased maintenance, cleaning and redecorating costs from smoking, and (c) the increased risk of fire and insurance costs associated with smoking, in the Premises and the common areas in the building, and on the Property. The term "smoking" means inhaling, exhaling, breathing, or carrying any lighted or heated cigar, cigarette, or other tobacco product or plant product or similar lighted product in any manner or in any form. Smoking also includes use of an electronic cigarette. The term "electronic cigarette" means any electronic device that provides a vapor or liquid nicotine and/or other substances to the user as the user simulates smoking. The term shall include such devices whether they are manufactured or referred to as e-cigarettes, e-cigars, e-pipes or under any product name.

Smoking is not allowed anywhere in the Premises or in the common areas of the Property or grounds. It will be a material breach of this Lease if Resident or any Occupant or guest smokes in the Premises or the common areas of the Property and such breach shall constitute grounds for immediate termination of this Lease and Resident's tenancy. Additionally, a violation of the no smoking policy may result in a $25 charge per violation. Payment of the violation charge does not waive Landlord's right to terminate this Lease and Resident's tenancy. Resident shall inform Occupants and guests of this no-smoking policy. Landlord will have the right, but not the obligation, to enforce Resident's smoke-free obligations. Landlord does not guarantee or warranty the smoke-free condition of the designated smoke-free areas or the health of Resident. Landlord shall owe no duty to any Resident or Occupant to enforce this provision against any other Resident or Occupant. Landlord makes no implied or express warranties that the Premises or Property will have higher air quality standards than any other areas. The success of Landlord's efforts to make the designated areas smoke-free are dependent on compliance by Resident and others. If Resident or any Occupants or guests have respiratory ailments, allergies, or any other physical or mental condition relating to smoke, Resident acknowledges receiving notice that Landlord does not assume any higher duty of care to provide a smoke-free environment than the duty of any other landlord under any lease for premises where smoking is not prohibited. Furthermore, Landlord reserves the right to change or eliminate the smoke-free policy in the future. Residents of other buildings on the Property may not be under the same smoke-free restrictions.

Resident agrees that in the event smoking occurs in the Premises, Resident will be responsible for the cost to restore the Premises to its smoke-free condition upon move out and damage to the Premises. Such costs include, but are not limited to, repainting, ozone or other odor removal treatment and replacement of carpet, window treatments, appliances, countertops, ceiling fans and flooring.

**The Landlord, its agents, and employees are pledged to both the letter and spirit of the U.S. and District of Columbia policy for the achievement of equal housing opportunity throughout the nation. Landlord strictly abides by all applicable Federal, state, and county laws. Management does not discriminate on the basis of race, color, religion, sex, national origin, familial status, disability, or any other protected classes under District of Columbia law.**

# RULES AND REGULATIONS

**SIGNS AND NOTICES**
No advertisements, signs, or other notices may be posted on bulletin boards and/or areas provided for this service unless first approved in writing by Landlord. No advertisements, signs, notices or similar items may be placed on walls, callboards, mailboxes, apartment doors, windows, or any common areas except as herein stated.

**NOISE, DISTURBANCES, ETC.**
The loud playing of stereos, televisions or musical instruments and any noisy or boisterous conduct that would disturb the peace and quiet to which other residents are entitled is prohibited.

**PROPER ATTIRE**
Residents and guests must wear proper attire in halls, lobbies, and in all other common areas. At no point should Residents be bare foot while in common areas.

**SOLICITATIONS**
Solicitation is not permitted on the property. Any solicitors or suspicious persons should be immediately reported to the Management Office and/or Front Desk.

**PETS**
No dogs, cats, or pets of any kind are permitted on the Premises without Landlord's prior written consent. The execution of a Pet Addendum and payment of any applicable pet deposit(s), fee(s), and/or additional rent may be required. Certain types, breeds and/or sizes/weight may be prohibited. Pets may be permitted on certain floors and/or buildings only.

Residents are responsible for informing their visitors that visitors' pets are not allowed on the Premises. Residents are not permitted to use their apartments to care for pets belonging to other persons without prior **written consent** from Landlord.

**ENTERING AN APARTMENT**
A resident's consent to enter should be on file in the Management Office for general maintenance to be completed by property personnel. Deliveries and/or outside service companies will not be permitted to enter Resident's apartment in Resident's absence without Resident's **express written consent** for each delivery and/or service. **Permission to enter an apartment is not required in case of emergency.**

**MOVING**
Moving of furniture and household goods into and from the Premises is restricted to the hours and days prescribed by Landlord and may be restricted to designated doors and/or elevators. Use of elevators for moving purposes must be scheduled with the Management Office and/or Front Desk.

**PAINTING AND REDECORATING**
Residents may paint drywall portions of walls only with prior **written consent** from Landlord. **Painting of brick walls, concrete pillars/ceilings or any surface that is part of the original building structure is prohibited.** It is understood that when Resident vacates, walls must be restored to the original color or Resident will be charged for any additional coat(s) of paint. It is the residents' responsibility to obtain and document all written approvals or conversations regarding changes to the Premises.

**WINDOW COVERINGS**
Window coverings are to be at least three inches from all registers. The side facing out must be black to promote uniformity in the external appearance of the property. Windows may not be covered with aluminum foil or any other type of tinting/darkening product. **At no time may window coverings furnished by Landlord be removed.**

**NAILS IN CEILINGS AND WALLS**
No spikes or hooks shall be driven into the ceiling, walls and/or woodwork. Small nails may be used for the purpose of hanging pictures unless other devices are recommended by Landlord. Fixtures used for hanging window coverings are permitted. **Resident must obtain written approval from Management Office before hanging or drilling into brick walls or concrete structures that are part of the original building structure. Wall mounted TVs should be professionally installed and should not be hung on brick walls or concrete columns.**

| | |
|---|---|
| **CHANGES TO STRUCTURE, EQUIPMENT, OR APPLIANCES** | No mechanical, electrical, plumbing or structural equipment or major appliances or configuration on any part of the Premises may be altered, modified, installed or removed without express written consent of Landlord. Resident shall be responsible for all costs for repair or replacement of any unauthorized removals or changes. |
| **BALCONIES, PATIOS & WINDOWS** | Patios or balconies must be neat and clean at all times. Bicycles, motorcycles, boxes and/or equipment may not be stored on patios or balconies. Grills may not be used or stored on balconies or patios. Towels and laundry may not be hung within patios and balconies or from balcony railings. Decorative lights may not be attached to or hung from balcony railings. Flower planters must be hung inside balcony railings. Furniture, other than acceptable lawn furniture, shall not be kept on balconies or patios. Carpeting is prohibited. Bird feeders are prohibited. Exterior window sills must be kept clear at all times. Resident will not allow anything whatsoever to fall from the balconies, patios, or windows of the Premises. Resident will be held legally and financially responsible for any and all damage caused by falling objects. |
| **TRASH AND RECYCLING** | All Residents are required to separate recyclables and landfill trash and to participate in recycling programs. Special containers for recycling are provided in areas prescribed by Landlord. Signs outlining acceptable Recycling items are posted by the respective containers. Boxes and cartons must be broken down. Only place materials that cannot be reused or recycled in the trash. Dispose of trash ONLY in areas prescribed by Landlord. Chutes may be located throughout the building(s). Before depositing trash into the chutes, please be sure it is placed in small trash bags and tightly tied. No trash, bottles, or papers shall be left in any utility room, hall, elevator, or other common area. Do not sweep dust, dirt, or trash into a common area or dispose of from windows, doors, or balconies. Residents are responsible for disposing of all furniture items. Landlord reserves the right to bill Resident for removal of garbage/trash left in an unauthorized area. |
| **USE AND CARE OF PLUMBING FIXTURES** | The toilets, bathtubs, sinks, and garbage disposal shall be used only for their intended purpose. The Resident shall pay for any damage resulting from any type of misuse whatsoever. |
| **WIRING, CONDUIT & UTILITY LINES** | Running exposed wires or fixtures in violation of electrical code is prohibited. Resident shall report any defects in utility lines (gas, water, electrical) to Landlord immediately. |
| **COOKING** | Cooking or baking shall only be done in the kitchen or other areas **expressly designated** by Landlord. Cooking food on balconies and/or patios using hibachis, grills, etc. is prohibited; this includes outdoor spaces in Penthouses units. |
| **OBSTRUCTION OF PASSAGEWAYS** | The lobbies, sidewalks, entries, passages, vestibules, halls, stairways and/or elevators shall not be obstructed or used for any purpose other than for entering and leaving the respective apartments and buildings. Personal property shall not be left in halls, walks, entrances, or any other common area. Loitering or lounging is strictly prohibited. |
| **SMOKING** | Smoking is not allowed anywhere in the Premises or in the common areas of the Property or grounds. |
| **RECREATION AREAS** | Recreation is permitted only in designated areas, not in vacant apartments or in common areas such as lobbies, elevators, halls, walks, or parking lots. |
| **INSURANCE** | Insurance coverage maintained by Landlord does not protect Residents from loss of personal property or liability for property damage, fire and casualty losses caused by Resident's negligence. Resident is advised to obtain insurance protecting his/her personal property. |

| | |
|---|---|
| **AMENITIES** | Persons using amenities do so at their own risk. Landlord does not assume responsibility for any accident or injury in connection with such use, and shall not be held liable for any losses, expenses, damages, or costs suffered or incurred or in any way arising from such use. Regulations governing amenities and common areas are subject to change without notice to ensure proper use and to avoid abuse and/or damage. |
| **HAZARDOUS SUBSTANCES** | Inflammable, combustible, and explosive fluids, chemicals, or substances shall not be kept in the apartment, on the balcony, or in any storage area except those intended and required for normal household use. |
| **ENERGY CONSERVATION** | Reasonable efforts must be made to conserve energy resources.  Resident shall not cause or permit any waste, misuse or neglect to occur to the water, gas, utilities or any other portion of the Premises. |
| **LOCKOUTS** | A lockout fee may be assessed if a Resident requires assistance after office hours. This charge will be in addition to monthly rent and will be billed by the Management Office.  No money is to be paid to any management employee at the time of the lockout. |
| **ACCESS DEVICES** | A replacement fee will be assessed for lost or stolen access devices.  Access devices include but are not limited to, unit key(s), FOB key(s), mailbox key(s), garage transponder(s), and any other device utilized for accessing the Premises and Property. All access devices are for the exclusive use of approved Resident and Occupants only, and must be returned to Landlord at the time of move out.  The replacement fee for access devices not returned will be charged to Resident.  Any access devices utilized by guests and/or persons other than Resident may be de-activated at Landlord's discretion. |
| **CAR CARE** | Washing, repairing, or lubricating vehicles on the premises is not permitted. |
| **PRIVATE WORK FOR EMPLOYEES** | Residents are not permitted to request Landlord's employees to perform work of a private nature. |
| **WILD/STRAY ANIMALS** | Feeding of stray/wild animals is prohibited. |
| **RESIDENT PORTAL** | Landlord encourages the use of the secure resident portal to make payments, view account balances, enter service requests, register guests and visitors, and view community announcements and other important documents, etc. |
| **VISITORS** | Visitors must be announced by telephone before they are allowed entrance into the residential areas of the building.  In the event Resident expects deliveries, and/or guests while not at home, **express written consent** must be filed at the Front Desk for **each** case.  Resident must contact the Front Desk to give permission for entry for all visitors arriving between 12:00 A.M. and 6:00 A.M.  Guests arriving during this restricted time frame must contact Resident prior to arrival to obtain appropriate access to the building and will not be permitted to use the phone at the Front Desk during this time frame. |
| **ADDITIONAL POLICIES** | All residents shall be governed by such additional policies as Landlord may publish from time to time. Such additional policies will carry the same weight and obligation as the rules and regulations listed herein. Resident shall follow such rules, regulations, and policies as may be posted in buildings, recreational areas, and common areas, and shall direct family, visitors, invitees, licensees, and agents to also comply. |

**Title 14 - Housing**

**Chapter 1 Administration and Enforcement**

**101    CIVIL ENFORCEMENT POLICY**

101.1    The maintenance of leased or rental habitations in violation of the provisions of this subtitle, where those violations constitute a danger to the health, welfare, or safety of the occupants, is declared a public nuisance.

101.2    The abatement of the public nuisances referred to in subsection 101.1 by criminal prosecution or by compulsory repair, condemnation, and demolition alone has been and continues to be inadequate.

101.3    The public nuisances referred to in subsection 101.1 additionally cause specific, immediate, irreparable and continuing harm to the occupants of these habitations.

101.4    The public nuisances referred to in subsection 101.1 damage the quality of life and the mental development and well-being of the occupants, as well as their physical health and personal property, and this harm cannot be fully compensated for by an action for damages, rescission or equitable set-off for the reduction in rental value of the premises.

101.5    It is the purpose of this section to declare expressly a public policy in favor of speedy abatement of the public nuisances referred to in subsection 101.1, if necessary, by preliminary and permanent injunction issued by Courts of competent jurisdiction.

SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2901, Commissioners' Order 55-1503 (August 11, 1955).

**106    NOTIFICATION OF TENANTS CONCERNING VIOLATIONS**

106.1    After an inspection of a habitation, the Director shall provide the tenant of the habitation a copy of any notification with respect to that habitation issued to the owner pursuant to this subtitle.

106.2    The notification to the tenant shall state plainly and conspicuously that it is only for the tenant's information; Provided that if the notice places duties on the tenant, it shall state those duties.

106.3    In any instance where a violation of this subtitle directly involves more than one habitation, the Director shall post a copy of any notification issued to the owner pursuant to this chapter for a reasonable time in one or more locations within the building or buildings in which the deficiency exists.  The locations for posting the notification shall be reasonably selected to give notice to all tenants affected.

106.4    No person shall alter, modify, destroy, or otherwise tamper with or mutilate a notification posted under this section.

106.5    Any tenant directly affected by the violation(s) shall, upon request to the Director, be sent a copy of the posted notification.

106.6    This section shall not be subject to any notice requirement of this subtitle.

SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2903(b), Commissioners' Order 55-1503 (August 11, 1955).

**Chapter 3 Landlord and Tenant**

**Section**

300     Notice to Tenants of Housing Code Provisions

301     Implied Warranty and Other Remedies

302     Voiding Lease for Violation of Regulations

303     Signed Copies of Agreements and Applications

304     Prohibited Waiver Clauses in Lease Agreements

305     Inspection of Premises after Breach of Warranty or Voided Lease

306     Written Receipts for Payments by Tenant

307     Prohibitions of Retaliatory Acts Against Tenants

308     Security Deposits

309     Repayment of Security Deposits to Tenants

310     Return of Security Deposit:  Inspection of Premises

311     Interest on Security Deposit Escrow Accounts

312-314         [Reserved]

315     Notification Required

399     Definitions

**300     NOTICE TO TENANTS OF HOUSING CODE PROVISIONS**

300.1    The owner of each habitation shall provide to each existing tenant, and shall the commencement of any tenancy provide to the tenant, a copy of the provisions of this chapter and a copy of the following sections of chapter 1 of this subtitle:

        (a)   Chapter 1, § 101 (Civil Enforcement Policy); and

        (b)   Chapter 2, § 106 (Notification of Tenants Concerning Violations).

AUTHORITY:   Unless otherwise noted, the authority for this chapter is contained at paragraphs 28 and 46 of section 7 of An Act Making appropriations to provide for the expenses of the government of the District of Columbia for the fiscal year ending June thirtieth, nineteen hundred and three, and for other purposes ("Act of 1902), Public, No. 218, 32 Stat. 590, approved July 1, 1902, as amended by:  An Act approved July 1, 1932 to amend section 7 [of the Act of 1902], Public, No. 237, 47 Stat. 550; and An Act approved July 22, 1947, Public Law 215, 61 Stat. 402.

SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2904, Commissioners' Order 55-1503 (August 11, 1955).

**301     IMPLIED WARRANTY AND OTHER REMEDIES**

301.1    There shall be deemed to be included in the terms of any lease or rental agreement covering a habitation and implied warranty that the owner will maintain the premises in compliance with this subtitle.

301.2    The rights, remedies, and duties set forth in this chapter shall not be deemed to be exclusive of one another unless expressly so declared or to preclude a court of law from determining that practices, acts, lease provisions and other matters not specifically dealt with in this chapter are contrary to public policy or unconscionable or otherwise unlawful.

SOURCE:  The Housing Regulation of the District of Columbia, 5G DCRR §§ 2902, 2913, Commissioners' Order 55-1503 (August 11, 1955)

**302    VOIDING LEASE FOR VIOLATIONS OF REGULATIONS**

302.1    The leasing of any habitation which, at the beginning of the tenancy, is unsafe or unsanitary due to violations of this subtitle in that habitation or in the common space of the premises (whether or not those violations are the subject of a notice issued under this subtitle) of which the owner has knowledge or reasonably should have knowledge, shall render void the lease or rental agreement for the habitation.

302.2    After the beginning of the tenancy, if the habitation becomes unsafe or unsanitary due to violations of this subtitle in that habitation or in the common space of the premises (whether or not the violations are the subject of notice issued under this subtitle), the lease or rental agreement for the habitation shall be rendered void if both of the following apply:

    (a)    The violations did not result from the intentional acts or negligence of the tenant or his or her invitees; and

    (b)    The violations are not corrected within the time allowed for correction under a notice issued under this subtitle (or, if a notice has not been issued, within a reasonable time after the owner has knowledge or reasonably should have knowledge of the violations).

SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2902, Commissioners' Order 55-1503 (August 11, 1955).

**303    SIGNED COPIES OF AGREEMENTS AND APPLICATIONS**

303.1    In each lease or rental of a habitation entered into after June 12, 1970, the owner shall provide to the tenant upon execution (or within seven (7) days after execution) and exact, legible, completed copy of any agreement or application which the tenant has signed.

303.2    This section shall not be subject to any notice requirement of this subtitle.

SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2905, Commissioners' Order 55-1503 (August 11, 1955).

**304    PROHIBITED WAIVER CLAUSES IN LEASE AGREEMENTS**

304.1    Any provision of any lease or agreement contrary to, or providing for a waiver of, the terms of this chapter, or § 101 or § 106 of chapter 1, shall be void and unenforceable.

304.2    No person shall cause any of the provisions prohibited by this section to be included in a lease or agreement respecting the use of the property in the District of Columbia, or demand that any person sing a lease or agreement containing any such provision.

304.3    No owner shall cause to be placed in a lease or rental agreement any provision exempting the owner or premises from liability or limiting the liability of the owner or the residential premises from damages for injuries to persons  or property caused by or resulting from negligence of the owner (or the owner's agents, servants, or employees) in the operation, care or maintenance of the leased premises, or any facility upon or portion of the property of which the leased premises are a part.

304.4    No owner shall place (or cause to be placed) in a lease or rental agreement a provision waiving the right of a tenant of residential premises to a jury trial, or requiring that the tenant pay the owner's court costs or legal fees, or authorizing a person other than the tenant to confess judgment against a tenant.  This subsection shall not preclude a court from assessing court or legal fees against a tenant in appropriate circumstances.

304.5    The provisions of this section shall not be subject to any notice requirement of this subtitle.

SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR §§ 2906, 2907, and 2912, Commissioners' Order 55-1503 (August 11, 1955).

**305    INSPECTION OF PREMISES AFTER BREACH OF WARRANTY OF VOIDED LEASE**

305.1    Following a judicial determination that the owner has breached the implied warranty of habitability applying to the premises (under § 301 of this chapter), or following a judicial determination that a lease or rental agreement is void, the owner shall obtain a certificate from the Director that the habitation is in compliance with this subtitle prior to the next reletting of the habitation.

SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2911, Commissioners' Order 55-1503 (August 11, 1955).

**306    WRITTEN RECEIPTS FOR PAYMENTS BY TENANT**

306.1    In each lease or rental of a habitation, the owner shall provide written receipts for all monies paid to him or her by the tenant as rent, security, or otherwise, unless the payment is made by personal check.

306.2    Each receipt issued under this section shall state the following:

    (a)    The exact amount received;

    (b)    The date the monies are received; and

    (c)    The purpose of the payment.


306.3    Each receipt shall also state any amounts still due which are attributable to late charges, court costs, or any other such charge in excess of rent.

306.4    If payment is made by personal check, and there is a balance still due which is attributable to late charges, court costs, or any other such charge in excess of rent, the owner shall provide a receipt stating the nature of the charges and the amount due.

306.5    The provisions of this section shall not be subject to any notice requirements of the subtitle.

SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2909, Commissioners' Order 55-1503 (August 11, 1955).

**307    PROHIBITION OF RETALIATORY ACTS AGAINST TENANTS**

307.1    No action or proceeding to recover possession of a habitation may be brought against a tenant, nor shall an owner otherwise cause a tenant to quit a habitation involuntarily, in retaliation for any of the tenant's actions listed in § 307.3.

307.2    No demand for an increase in rent from the tenant, nor decrease in the services to which the tenant has been entitled, nor increase in the obligations of a tenant shall be made in retaliation against a tenant for any of the tenant's actions listed in § 307.3.

307.3    This section prohibits the taking of any of the actions set forth in this section in retaliation against the tenant for any of the following actions by a tenant:

    (a)    A good faith complaint or report concerning housing deficiencies made to the owner or a governmental authority, directly by the tenant or through a tenant organization;

    (b)    The good faith organization of a tenant organization or membership in a tenant organization;

    (c)    The good faith assertion of rights under this subtitle, including rights under §§ 301 and 302 of this chapter, or § 101 of chapter 1.


SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2910, Commissioners' Order 55-1503 (August 11, 1955).

**308      SECURITY DEPOSITS**

308.1      For purposes of this chapter, the term "security deposit" shall mean monies paid to the owner by the tenant as a deposit or other payment made as security for performance of the tenant's obligations in a lease or rental of the property.

308.2      On or after February 20, 1976, any security deposit or other payment required by an owner as security for performance of the tenant's obligations in a lease or rental of a dwelling unit shall not exceed an amount equivalent to the first full month's rent charged that tenant for the dwelling unit, and shall be charged only once by the owner to the tenant.

308.3      All monies paid to an owner by tenants for security deposits or other payment made as security for performance of the tenant's obligations shall be deposited by the owner in an interest bearing escrow account established and held in trust in a financial institution in the District of Columbia insured by a federal or state agency for the sole purpose of holding such deposits or payments.

308.4      All monies held by an owner on February 20, 1976 for security deposits or other payments covered by this section shall be paid into an escrow within thirty (30) days.

308.5      The owner of more than one residential building may establish one (1) escrow account for holding security deposits or other payments by the tenants of those buildings.

308.6      For each security deposit or other payment covered by this section, the owner shall clearly state in the lease or agreement or on the receipt for the deposit or other payment the terms and conditions under with the payment was made.

308.7      The housing provider shall post in the lobby of the building and rental office at the end of each calendar year, the following information:  Where the tenants' security deposits are held and what the prevailing rate was for each six-month (6) period over the past year.  At the end of a tenant's tenancy, the housing provider shall list for the tenant the interest rate for each six month period during the tenancy.

308.8      The provisions of this section shall not be applicable to Federal or District of Columbia agencies' dwelling units leased in the District of Columbia or to units for which rents are Federally subsidized.

SOURE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2908, Commissioners' Order 55-1503 (August 11, 1955); as amended by: section 3 of the Security Deposit Act, D.C. Law 1-48, 22 DCR 2823 (November 28, 1975); and section 2 of the Adjustment of Interest Rates Paid on Rental Security Deposits Amendment Act of 1992, D.C. Law 9-212, §§ 2908.1 (b) and 2908.5, 40 DCR 2204 (March 17, 1993), incorporating by reference the text of D.C. Act 9-341, 40 DCR 23 (December 21,1992); as amended by D.C. Act 16-633 at 54 DCR 889 (February 2, 2007).

**309      REPAYMENT OF SECURITY DEPOSITS TO TENANTS**

309.1   Within forty-five (45) days after the termination of the tenancy, the owner shall do one of the following:

(1)   Tender payment to the tenant, without demand, any security deposit and any similar payment paid by the tenant as a condition of tenancy in addition to the stipulated rent, and any interest due the tenant on that deposit or payment as provided in paragraph (4)(a) and (a-1) (14 DCMR § 311; or

(2)   Notify the tenant in writing, to be delivered to the tenant personally or by certified mail at the tenant's last known address, of the owner's intention to withhold and apply the monies toward defraying the cost of expenses properly incurred under the terms and conditions of the security deposit agreement.

309.2      The owner, within thirty (30) days after notification to the tenant pursuant to the requirement of paragraph (2)(a)(2) (14DCMR § 309.1 (b), shall tender a refund of the balance of the deposit or payment, including interest not used to defray such expenses, and at the same time give the tenant an itemized statement of repairs and other uses to which the monies were applied and the cost of each repair or other use.

309.3    Failure by the owner to comply with § 309.1 and § 309.2 of this section shall constitute *prima facie* evidence that the tenant is entitled to full return, including interest as provided in § 311, of any deposit or other payment made by the tenant as security for performance of his or her obligations or as a condition of tenancy, in addition to the stipulated rent.

309.4    Failure by the owner to serve the tenant personally or by certified mail, after good faith effort to do so, shall not constitute a failure by the owner to comply with § 309.1 and § 309.2.

309.5

(1)    Any housing provider violating the provisions of this section by failing to return a security deposit rightfully owed to a tenant in accordance with the requirements of this section shall be liable for the amount of the deposit withheld, or in the event of bad faith, for treble damages.

(2)    For the purpose of this sub-paragraph, the term "bad faith" means any frivolous or unfounded refusal to return a security deposit, as required by law, that is motivated by a fraudulent, deceptive, misleading, dishonest, or unreasonably self-serving purpose and not by simple negligence, bad judgment, or an honest belief in the course of action taken.

SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2908, Commissioners' Order 55-1503 (August 11, 1955); as amended by Section 3 of the Security Deposit Act, effective February 20, 1976, (D.C. Law 1-48, 22 DCR 2823 (November 28, 1975); as amended by Section 2 of the Unitary Rent Ceiling Adjustment Amendment Act of 1992, effective March 16, 1993 (D.C. Law 9-191, 40 DCR 2184 (April 2, 1993); as amended by the Interest on Rental Security Deposits Amendment Act of 2006, effective March 14, 2007 (D.C. Law 16-276; 54 DCR 889 (February 2, 2007); as amended by the Tenant Security Deposits Clarification Amendment Act of 2012, effective June 7, 2012 (D.C. Law 19-140; 59 DCR 2879 (April 13, 2012)).

## 310    RETURN OF SECURITY DEPOSIT:  INSPECTION OF PREMISES

310.1    In order to determine the amount of the security deposit or other payment to be returned to the tenant, the owner may inspect the dwelling unit within three (3) days, excluding Saturdays, Sundays, and holidays, before or after the termination of the tenancy.

310.2    The owner shall conduct the inspection, if the inspection is to be conducted, at the time and place of which notice is given to the tenant.

2310.3    The owner shall notify the tenant in writing of the time and date of the inspection.

310.4    The notice of inspection shall be delivered to the tenant, or at the dwelling unit in question, at least ten (10) days before the date of the intended inspection.

SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2908, Commissioners' Order 55-1503 (August 11, 1955); as amended by section 3 of the Security Deposit Act, D.C. Law 1-48, 22 DCR 2823 (November 28, 1975).

## 311    INTEREST ON SECURITY DEPOSIT ESCROW ACCOUNTS

311.1    The interest in the escrow account described in Section 2908.1(b) (14 DCMR § 308.3 on all money paid by the tenant prior to or during the tenancy as a security deposit, decorating fee, or similar deposit or fee, shall commence on the date the money is actually paid by the tenant, or within thirty (30) days after February 20, 1976, whichever is later, and shall accrue at not less than the statement savings rate then prevailing on January 1st and on July 1st for each 6-month period (or part thereof) of the tenancy which follows those dates.  On those dates, the statement savings rate in the District of Columbia financial institution in which the escrow account is held shall be used.  All interest earned shall accrue to the tenant except for that described in paragraph (4)(a-1) or as set forth in paragraph (2)(14 DCMR § 309.

311.2    Interest on an escrow account shall be due and payable by the owner to the tenant upon termination of any tenancy of a duration of twelve (12) months or more, unless an amount is deducted under procedures set forth in

paragraph (2) (14 DCMR §§ 309.1 and 309.2).  Any housing provider violating the provisions of this section by failing to pay interest on a security deposit escrow account that is rightfully owed to a tenant in accordance with the requirements of this section, shall be liable to the tenant, as applicable, for the amount of the interest owed, or in the event of bad faith, for treble that amount. For the purposes of this paragraph, the term "bad faith" means any frivolous or unfounded refusal to pay interest on a security deposit, as required by law, that is motivated by a fraudulent, deceptive, misleading, dishonest, or unreasonably self-serving purpose and not by simple negligence, bad judgment, or an honest belief in the course of action taken. Any housing provider who willfully violates the provisions of this section by failing to pay interest on a security deposit escrow account that is rightfully owed to a tenant in accordance with the requirements of this section shall be subject to a civil fine of not more than $ 5000 for each violation.

(1)     If the housing provider invests the security deposit in an account with an interest rate that exceeds that of the statement savings rate as required in subparagraph (a)(14) (14 DCMR § 311.1), the housing provider may apply up to 30% of the excess interest for administrative costs or other purposes.

311.3     Except in cases where no interest is paid to the tenant as provided in § 311.2, the owner shall not assign the account or use it as security for loans.

311.4     It is the intent of this section that the account referred to in this section and § 309 shall be used solely for the purpose of securing the lessees' performance under the lease.

311.5     This section and § 309 and § 310 shall not be subject to the notice requirements of any other section of this subtitle.

SOURCE:  The Housing Regulations of the District of Columbia, 5G DCRR § 2908, Commissioners' Order 55-1503 (August 11, 1955); as amended by: section 3 of the Security Deposit Act, D.C. Law 1-48, 22 DCR 2823 (November 28, 1975); as amended by Section 2 of the Adjustment of Interest Rates Paid on Rental Security Deposits Amendment Act of 1992, effective March 17, 1993 (D.C. Law 9-212, § 2908.4(a), 40 DCR 2204 (March 17, 1993), incorporating by reference the text of D.C. Act 9-341, published at 40 DCR 23 (December 21, 1992) ; as amended by the Interest on Rental Security Deposits Amendment Act of 2006, effective March 14, 2007 (D.C. Law 16-276; 54 DCR 889 (February 2, 2007); as amended by the Tenant Security Deposits Clarification Amendment Act of 2012, effective June 7, 2012 (D.C. Law 19-140; 59 DCR 2879 (April 13, 2012).

## 312 – 314          [RESERVED]

## 315          NOTIFICATION REQUIRED

315.1     Prior to the acceptance of a nonrefundable application fee or security deposit, the owner of the habitation shall provide written notice of any requests that are pending for an adjustment in the rent ceiling of the habitation, as the adjustments are specifically enumerated in section 207 of the Rental Housing Act of 1985, D.C. Law 6-10, D.C. Official Code § 42-3502.07 (2001).

315.2     The notification shall include the current rent ceiling, the new rent ceiling requested in the petition, the petition filing date and petition number, and the nature of any repairs or rehabilitation planned in the dwelling unit as part of the petition.

315.3     A violation of this section shall be a Class 2 civil infraction pursuant to Titles I-III of the Department of Consumer and Regulatory Affairs Infractions Act of 1985.  Adjudication of any infraction of this article shall be pursuant to titles I-III of the Department of Consumer and Regulatory Affairs Civil Infractions Act of 1985.

SOURCE:  Section 2 of the Rent Ceiling Adjustment Notification Amendment Act of 1992, D.C. Law 9-79, §§ 2915.1 through 2915.3, 39 DCR 673 (February 7, 1992).

## 399          DEFINITIONS

399.1     The provisions of section 199 of chapter 1 of this title and the definitions set forth in that section shall be applicable to this chapter.

**UTILITY ADDENDUM FOR WATER, SEWER, GAS, TRASH AND ELECTRIC SERVICE**

This is an addendum to the Lease Agreement dated 06/15/2024, or any renewal or extension thereafter, between Brookfield Properties Multifamily LLC Landlord, and Norman Propst, Resident(s), regarding the dwelling unit located at 1346 4th Street SE #704, Washington, DC  20003.  This Utility Addendum constitutes an Addendum to the above described Lease Agreement.  Where the terms or conditions found in this Addendum vary or contradict any terms or conditions found in the Lease Agreement, this Addendum shall control.

1.  Responsibility for payment of utilities, and the method of metering or otherwise measuring the cost of the utility, will be indicated below.

    a)  **Water** service to Resident's dwelling will be paid by either:
        ☐ by Landlord, because the payment for water service is included in Resident's rent charged ; or
        ☐ by Resident directly to the utility service provider; or
        ☒  by Resident when water bills are billed by the service provider to Landlord and then allocated to Resident based on the following formula: sub-metered
            ☐ If flat rate is selected, the current flat rate is $_____ per month.
            ☒ 3rd party billing company if applicable Metergy Solutions

    b)  **Sewer** service to Resident's dwelling will be paid by either:
        ☐ by Landlord, because the payment for water service is included in Resident's rent charged; or
        ☐ by Resident directly to the utility service provider; or
        ☒ by Resident when sewer bills are billed by the service provider to Landlord and then allocated to Resident based on the following formula: sub-metered
            ☐ if flat rate is selected, the current flat rate is $_____ per month.
            ☒ 3rd party billing company if applicable Metergy Solutions

    c)  **Gas** service to Resident's dwelling will be paid by either:
        ☐ by Landlord, because the payment for gas service is included in Resident's rent charged ; or
        ☐ by Resident directly to the utility service provider

    d)  **Trash** service to Resident's dwelling will be paid by either:
        ☐ by Landlord, because the payment for trash service is included in Resident's rent charged ; or
        ☐ by Resident directly to the utility service provider; or
        ☒ by Resident when trash bills are billed by the service provider to Landlord and then allocated to Resident based on the following formula:  as listed in section 11
            ☐ If flat rate is selected, the current flat rate is $_____ per month.
            ☒ 3rd party billing company if applicable Conservice

    e)  **Electric** service to Resident's dwelling will be paid by either:
        ☐ by Landlord, because the payment for gas service is included in Resident's rent charged ; or
        ☐ by Resident directly to the utility service provider

2.  If an allocation method is used, Landlord or its billing company will calculate Resident's allocated share of the utilities and services provided and all costs. Under any allocation method, Resident may be paying for part of the utility usage in common areas or in other residential units as well as administrative fees. Both Resident and Landlord agree that using a calculation or allocation formula as a basis for estimating total utility consumption is fair and reasonable, while recognizing that the allocation method may or may not accurately reflect actual total utility consumption for Resident. Where lawful, Landlord may change the above methods of determining Resident's allocated share of utilities and services and all other billing methods, in Landlord's sole discretion, and after providing written notice to Resident. More detailed descriptions of billing methods, calculations and allocation formulas will be provided upon request. If a flat fee method for trash or other utility service is used, Resident and Landlord agree that the charges indicated in this Addendum (as may be amended with written notice as specified above) represent a fair and reasonable amount for the service(s) provided and that the amount billed is not based on a monthly per unit cost.

3.  When billed by Landlord directly or through its billing company, Resident must pay utility bills by the due date stated on the bill. If a payment is late, Resident will be responsible for a late fee as indicated below. The late payment of a bill or failure to pay any utility bill is a material and substantial breach of the Lease and Landlord will exercise all remedies available under the Lease, up to and including eviction for nonpayment. To the extent permitted by law, to the extent there are any new account, monthly administrative, late or final bill fees, Resident shall pay such fees as indicated below.

        New Account Fee:               $15.00  (not to exceed $50.00)
        Monthly Administrative Billing Fee:    $4.00  (not to exceed $20.00)
        Late Fee:                     $_____ (not to exceed $_____)
        Final Bill Fee:              $15.00  (not to exceed $50.00)

    If allowed by state law, Landlord at its sole discretion may amend these fees, with written notice to Resident.

4.  For utilities which Resident is to pay (as stated above) Resident will be charged for the full period of time that Resident was living in, occupying, or responsible for payment of rent or utility charges on the dwelling. If Resident breaches the Lease, Resident will be responsible for utility charges for the time period Resident was obliged to pay the charges under the Lease, subject to Landlord's mitigation of damages. In the event Resident fails to timely establish utility services which are Resident's responsibility, Landlord may charge Resident for any utility service billed to Landlord for Resident's dwelling and may charge a reasonable administration fee for billing for the utility service in the amount of $50.00.

5.  When Resident moves out, Resident will receive a final bill which Resident must pay by the due date stated on the bill.

6.   Landlord is not liable for any losses or damages Resident incurs as a result of outages, interruptions, or fluctuations in utility services provided to the dwelling unless such loss or damage was the direct result of negligence by Landlord or its employees.

7.   Resident agrees not to tamper with, adjust, or disconnect any utility metering or sub-metering system or device. Violation of this provision is a material breach of Resident's Lease and may subject Resident to eviction or other remedies available to Landlord under Resident's Lease and this Utility Addendum.

8.   In the event Landlord is using a ratio utility billing system, any dispute relating to the computation of Resident's bill is between Resident and Landlord and not a third party billing agent.

9.   In the event Landlord is using a ratio utility billing system, Resident has the right to receive information from Landlord to verify the water and sewer utility bill.

10.  This Addendum is designed for use in multiple jurisdictions, and no billing method, charge, or fee mentioned herein will be used in any jurisdiction where such use would be unlawful. If any provision of this Addendum or the Lease is invalid or unenforceable under applicable law, such provision shall be ineffective to the extent of such invalidity or unenforceability only without invalidating or otherwise affecting the remainder of this Addendum or the Lease. Except as specifically stated herein, all other terms and conditions of the Lease shall remain unchanged. In the event of any conflict between the terms of this Addendum and the terms of the Lease, the terms of this Addendum shall control.

11.  The following special provisions and any addenda or written rules furnished to Resident at or before signing will become a part of this Utility Addendum and will supersede any conflicting provisions of this printed Utility Addendum and/or the Lease Agreement.

Method for trash fees are calculated based on the total amounts charged to the community for any trash related expenses by trash service provider(s).

Brookfield reserves the right to bill back stormwater if it is billed to the property. If billed, stormwater is calculated based on the total amount as billed by the utility provider and divided evenly among all dwelling units.

Conservice will charge $4.00 per bill mailed rent service fee, a $15.00 initial account set-up fee, and a $15.00 final bill fee.

Payment for your water and sewer usage is not included in your rent and will be billed separately by Metergy Solutions. You agree to pay Metergy Solutions directly for your utility usage as well as the fees and/or charges of Metergy Solutions for its services, including an initial account set-up fee of $16.95, a final bill fee of $16.95 and a monthly administration fee of $7.45, subject to change from time to time.

The monthly service fee(s) identified in paragraph 3, above, is for administration, overhead and similar expenses and charges incurred by the Owner in providing services relating to the billing of monthly utilities and services, and/or rent and ancillary property charges. If a Government Postal Rate, City or State Tax increase, or CPI increase occurs, the Owner shall have the right to reflect changes on the billing statement immediately.

Gas service to your dwelling will be paid by you when gas bills are billed by the service provider to us and then allocated to you based on a ratio occupancy formula.

Common Area Electric service to your dwelling will be paid by you when electric bills are billed by the service provider to us and then allocated to you based on a ratio square footage formula.

Resident agrees to a monthly flat fee of $0.75 for the provision of Pest Control services. Upon thirty (30) days advance written notice or longer if required by state or local law, Landlord may increase Resident's payment for Pest Control.

Resident(s):                                    Brookfield Properties Multifamily LLC

_____          By:    _____

_____          Date:  _____

_____

Date:    _____



NORMAN PROPST
HEAD OF HOUSEHOLD
SIGNED 6/12/2024 AT 7:09PM EDT

BPM ESIGNER
Elizabeth Dixon
SIGNED 6/14/2024 AT 4:13PM EDT

## INSURANCE LEASE ADDENDUM

This Insurance Lease Addendum ("Addendum") will serve as an Addendum to the Lease Agreement ("Lease") effective 06/15/2024, and any renewal or extension thereafter, between Brookfield Properties Multifamily LLC ("Landlord"), and Norman Propst ("Resident"), regarding the property located at 1346 4th Street SE #704, Washington, DC 20003, (the "Premises") in the "Property" named in the Lease.

The Lease is amended by the Addendum as follows:

As provided in the Lease, Resident is required to maintain liability insurance during the term of the Lease and any subsequent renewal periods. It is required that the insurance be no less than One Hundred Thousand Dollars ($100,000) for damages to the Landlord's Property with provisions covering, at a minimum, liability, property damage, fire and casualty loss ("Liability Coverage"). Resident waives any assignment of subrogation in favor of Landlord or its insurers.

To satisfy this obligation under your Lease, Resident has the following two options. In the event you do not satisfy the requirements under Option 2, you will be deemed to have elected Option 1.

**Option 1: Do Nothing and Enroll in AssetProtect to satisfy your Lease Liability Coverage requirement:**

Through the AssetProtect program (which may be insured through one of its affiliated insurance carriers), our community offers a cost-effective insurance program with Liability Coverage as well as an endorsement for limited personal property coverage ("Contents Coverage").

For $16.75 per month ("Monthly Cost"), the AssetProtect program satisfies the Liability Coverage insurance requirement in your Lease and provides $20,000.00 in supplemental Contents Coverage for Resident's personal belongings while located on the Premises for specified named perils. The Contents Coverage is subject to the specific terms, conditions and exclusions of the insurance policy offered through the AssetProtect program and is subject to a per claim deductible of $250 ($500 for burglary).

Resident will pay the Monthly Cost as an insurance reimbursement fee which shall be due and payable each month without demand at the time rent is due. The Monthly Cost will be billed to your resident account ledger, is not pro-rated, and are deemed fully earned upon enrollment. Resident may opt out of the AssetProtect program at any time so long as Resident satisfies the requirements under Option 2.

The Liability Coverage and Contents Coverage will be as set forth on the Evidence of Insurance ("Evidence of Insurance") provided to Resident under Landlord's Master Policy for the Property ("Master Policy"). The Resident is a Loss Payee under the Master Policy for the Contents Coverage. Upon enrollment, you will receive Evidence of Insurance.

The Master Policy contains the complete list of terms, conditions, limitations and of the Liability Coverage and Contents Coverage. A complete copy of the Master Policy, form of Evidence of Insurance, and full coverage details are available at https://LeaseTrack.ai/Brookfield or you may contact LeaseTerm Insurance Group, LLC at (888) 814-6950.

Landlord (including its employees and agents) provides no representations or warranties with respect to the insurance or services provided by the AssetProtect program or the sufficiency of such insurance or any other insurance described herein. The Contents Coverage limits may or may not satisfy your personal needs based on the value of your personal property and it is your decision to determine if this program satisfies your personal needs. You are under no obligation to elect this option or enroll through the AssetProtect program. The AssetProtect program is not owned or operated by Landlord, however, Landlord may receive an administrative fee as compensation in the event you are enrolled.

**YOU WILL BE ENROLLED IN THIS PROGRAM UNLESS YOU PROCEED WITH OPTION 2**

**Option 2: Third-Party Policy:**

In the event Resident elects to obtain its own Liability Coverage insurance policy, Resident shall ensure that Brookfield Properties Multifamily LLC and the Property are each named as an "Additional Interest" or "Interested Party" and Landlord is notified if the policy is cancelled or terminated. Such policy shall be written as a policy not contributing to and not in excess of coverage which Landlord may carry, shall contain a waiver of subrogation in favor of Landlord or its insurers and shall remain in full force and effect during the term of the Lease and any subsequent renewal periods. Evidence of insurance acceptable to Landlord must be received prior to or effective with the commencement of the Lease term.  If evidence of such third-party policy is not received by Landlord effective with the commencement of the Lease or lapses at anytime during the term of the Lease, Resident acknowledges that Resident will automatically be enrolled in Option 1 and will be responsible for payment of the Monthly Cost due.

You may submit your proof of coverage via mail:  P.O. Box 38267, Albany, NY 12203, via email: Brookfield@leasetrack.ai, via website:  LeaseTrack.ai/renters or via fax at (518) 347-9030.

Resident agrees that a failure by Resident to comply with any of the terms and conditions of this Addendum shall constitute a default under the Lease to the extent permitted by applicable law. In the event of such default and to the extent permitted by applicable law, Landlord shall have all rights and remedies available to it under the Lease.

Resident understands that the Owner or Property Manager is not a licensed insurance agent and is neither making an offer of insurance nor selling insurance.  Prior to selection of any insurance product, Landlord recommends Resident consult with a licensed insurance professional.  The foregoing summary is qualified in its entirety by the specific terms of the Master Policy and the Evidence of Insurance provided to Resident.

The provisions of the Lease are incorporated into this Addendum by this reference. In the event of any conflict between the Lease and this Addendum, the Addendum shall control.

Landlord has discretion to change providers and therefore the location for submission of proof of insurance is subject to change upon written notice of Landlord.

**Resident(s)**

Signature:  _____

Printed Name:  _____

Signature:  _____

Printed Name:  _____

Date:  _____

**Landlord:**

Brookfield Properties Multifamily LLC

By:  _____

Date:  _____



NORMAN PROPST
HEAD OF HOUSEHOLD
SIGNED 6/12/2024 AT 7:09PM EDT

BPM ESIGNER
*Elizabeth Dixon*
SIGNED 6/14/2024 AT 4:13PM EDT

## MIXED-USE ADDENDUM TO LEASE

This will serve as an Addendum to the Lease Agreement dated 06/15/2024, between Brookfield Properties Multifamily, LLC, Landlord, and Norman Propst, Resident(s), regarding property located at 1346 4th Street SE #704, Washington, DC  20003 (the Premises).

PURPOSE.  The purpose of this Addendum is to provide notice that the Premises and/or Community are located in an urban, mixed-use living environment.  The Premises and/or area surrounding the Premises is a high-density environment containing both residences and commercial businesses.  These commercial entities will produce certain noises, sounds, and odors up to twenty-four (24) hours a day.

RESIDENT ACKNOWLEDGEMENT. By signing this Addendum, Resident acknowledges, understands and hereby agrees that the Premises contains and is located in the immediate area of commercial businesses, including, but not limited to, bars, nightclubs, restaurants, retail stores, and parks.  Certain challenges may be associated with living in immediate proximity to such commercial businesses and in an urban, high-density environment.  These challenges may include, but are not limited to: lights, noises, vibrations, odors, smoke or sounds, including but not limited to music, voices, construction, traffic or other noises associated with commercial businesses in urban environments on or near the Premises, which may penetrate the walls and floors of the Premises.  Such challenges may occur up to twenty-four (24) hours a day.

RESIDENT DUE DILIGENCE. Landlord encourages Resident to research the area around the Premises.  Resident agrees that he/she was given the opportunity to exercise due diligence by reading this Addendum and researching the area surrounding the Premises.  Resident acknowledges and understands the risks disclosed herein and, having conducted due diligence, agrees to fully assume the risks set forth in this Addendum.

ASSUMPTION OF RISK/WAIVER.  Resident has chosen to reside at the Premises despite any inconveniences such as those disclosed herein or any other inconvenience, which may be associated with living in a mixed-use environment.  Resident further agrees he/she is voluntarily assuming the risks of inconvenience and nuisance related to residing in an apartment located in a mixed-use area.  Resident agrees that any inconvenience associated with the mixed-use and/or the surrounding area, such as, but not limited to, those disclosed herein, will not be deemed to give Resident any offset to rent obligations, nor will they be the basis for a complaint against Landlord for rent relief, constructive eviction, fitness and habitability, peaceful and quiet enjoyment, nuisance, or any other claim, right or remedy.  As such, Resident waives any and all claims against Landlord that arise out of, or are in any way related to, lights, noises, sounds, construction, traffic, vibrations, smoke, odors or any other inconvenience that may be caused by commercial businesses on the Premises or within the mixed-use area and/or their guests.

Resident:                                          Brookfield Properties Multifamily, LLC:

_____      By:_____

_____      Date:_____

_____

_____

Date:_____



NORMAN PROPST
HEAD OF HOUSEHOLD
SIGNED 6/12/2024 AT 7:09PM EDT



BPM ESIGNER
Elizabeth Dixon
SIGNED 6/14/2024 AT 4:13PM EDT

NOTICE OF OCCUPANCY RIGHTS UNDER           U.S. Department of Housing and Urban Development
THE VIOLENCE AGAINST WOMEN ACT                                OMB Approval No. 2577-0286

**Brookfield Properties Multifamily, LLC**

**Notice of Occupancy Rights under the Violence Against Women Act**[1]

**To all Tenants and Applicants**

The Violence Against Women Act (VAWA) provides protections for victims of domestic violence, dating violence, sexual assault, or stalking.  VAWA protections are not only available to women, but are available equally to all individuals regardless of sex, gender identity, or sexual orientation.[2]  The U.S. Department of Housing and Urban Development (HUD) is the Federal agency that oversees program compliance with VAWA.  This notice explains your rights under VAWA.  A HUD-approved certification form is attached to this notice.  You can fill out this form to show that you are or have been a victim of domestic violence, dating violence, sexual assault, or stalking, and that you wish to use your rights under VAWA."

**Protections for Applicants**

If you otherwise qualify for the current housing program, you cannot be denied admission or denied program eligibility because you are or have been a victim of domestic violence, dating violence, sexual assault, or stalking.

**Protections for Tenants**

If you otherwise qualify under the current housing program, you may not be denied, terminated from participation, or be evicted from your rental housing because you are or have been a victim of domestic violence, dating violence, sexual assault, or stalking.

Also, if you or an affiliated individual of yours is or has been the victim of domestic violence, dating violence, sexual assault, or stalking by a member of your household or any guest, you may not be denied participation or occupancy rights under the current housing program solely on the basis of criminal activity directly relating to that domestic violence, dating violence, sexual assault, or stalking.

Affiliated individual means your spouse, parent, brother, sister, or child, or a person to whom you stand in the place of a parent or guardian (for example, the affiliated individual is in your care, custody, or control); or any individual, tenant, or lawful occupant living in your household.

**Removing the Abuser or Perpetrator from the Household**

Brookfield Properties Multifamily, LLC (BPM) may divide (bifurcate) your lease in order to evict the individual who has engaged in criminal activity (the abuser or perpetrator) directly relating to domestic violence, dating violence, sexual assault, or stalking.

---

[1] Despite the name of this law, VAWA protection is available regardless of sex, gender identity, or sexual orientation.

[2] Housing providers cannot discriminate on the basis of any protected characteristic, including race, color, national origin, religion, sex, familial status, disability, or age.  HUD-assisted and HUD-insured housing must be made available to all otherwise eligible individuals regardless of actual or perceived sexual orientation, gender identity, or marital status.

Form **HUD-5380**
**(06/2017)**

If BPM chooses to remove the abuser or perpetrator, BPM may not take away the rights of eligible tenants to the unit or otherwise punish the remaining tenants.  If the evicted abuser or perpetrator was the sole tenant to have established eligibility under the program, BPM must allow the tenant who is or has been a victim and other household members to remain in the unit for a period of time, in order to establish eligibility under the program or under another HUD housing program covered by VAWA, or, find alternative housing.

In removing the abuser or perpetrator from the household, BPM must follow Federal, State, and local eviction procedures.  In order to divide a lease, BPM may, but is not required to, ask you for documentation or certification of the incidences of domestic violence, dating violence, sexual assault, or stalking.

**Moving to Another Unit**
Upon your request, BPM may permit you to move to another unit that you qualify for, subject to the availability of other units, and still participate in the housing program.  In order to approve a request, BPM may ask you to provide documentation that you are requesting to move because of an incidence of domestic violence, dating violence, sexual assault, or stalking.  If the request is a request for emergency transfer, the housing provider may ask you to submit a written request or fill out a form where you certify that you meet the criteria for an emergency transfer under VAWA.  The criteria are:

> **(1) You are a victim of domestic violence, dating violence, sexual assault, or stalking.**  If your housing provider does not already have documentation that you are a victim of domestic violence, dating violence, sexual assault, or stalking, your housing provider may ask you for such documentation, as described in the documentation section below.
> **(2) You expressly request the emergency transfer.**  Your housing provider may choose to require that you submit a form, or may accept another written or oral request.
> **(3) You reasonably believe you are threatened with imminent harm from further violence if you remain in your current unit.**  This means you have a reason to fear that if you do not receive a transfer you would suffer violence in the very near future.
> **OR**
> **You are a victim of sexual assault and the assault occurred on the premises during the 90-calendar-day period before you request a transfer.**  If you are a victim of sexual assault, then in addition to qualifying for an emergency transfer because you reasonably believe you are threatened with imminent harm from further violence if you remain in your unit, you may qualify for an emergency transfer if the sexual assault occurred on the premises of the property from which you are seeking your transfer, and that assault happened within the 90-calendar-day period before you expressly request the transfer.

BPM will keep confidential requests for emergency transfers by victims of domestic violence, dating violence, sexual assault, or stalking, and the location of any move by such victims and their families.

BPM's emergency transfer plan provides further information on emergency transfers, and BPM must make a copy of its emergency transfer plan available to you if you ask to see it.

**Documenting You Are or Have Been a Victim of Domestic Violence, Dating Violence, Sexual Assault or Stalking**

BPM can, but is not required to, ask you to provide documentation to "certify" that you are or have been a victim of domestic violence, dating violence, sexual assault, or stalking.  Such request from BPM must be in writing, and BPM must give you at least 14 business days (Saturdays, Sundays, and Federal holidays do not count) from the day you receive the request to provide the documentation.  BPM may, but does not have to, extend the deadline for the submission of documentation upon your request.

You can provide one of the following to BPM as documentation.  It is your choice which of the following to submit if BPM asks you to provide documentation that you are or have been a victim of domestic violence, dating violence, sexual assault, or stalking.

- A complete HUD-approved certification form given to you by BPM with this notice, that documents an incident of domestic violence, dating violence, sexual assault, or stalking. The form will ask for your name, the date, time, and location of the incident of domestic violence, dating violence, sexual assault, or stalking, and a description of the incident. The certification form provides for including the name of the abuser or perpetrator if the name of the abuser or perpetrator is known and is safe to provide.
- A record of a Federal, State, tribal, territorial, or local law enforcement agency, court, or administrative agency that documents the incident of domestic violence, dating violence, sexual assault, or stalking.  Examples of such records include police reports, protective orders, and restraining orders, among others.
- A statement, which you must sign, along with the signature of an employee, agent, or volunteer of a victim service provider, an attorney, a medical professional or a mental health professional (collectively, "professional") from whom you sought assistance in addressing domestic violence, dating violence, sexual assault, or stalking, or the effects of abuse, and with the professional selected by you attesting under penalty of perjury that he or she believes that the incident or incidents of domestic violence, dating violence, sexual assault, or stalking are grounds for protection.
- Any other statement or evidence that BPM has agreed to accept.

If you fail or refuse to provide one of these documents within the 14 business days, BPM does not have to provide you with the protections contained in this notice.

If BPM receives conflicting evidence that an incident of domestic violence, dating violence, sexual assault, or stalking has been committed (such as certification forms from two or more members of a household each claiming to be a victim and naming one or more of the other petitioning household members as the abuser or perpetrator), BPM has the right to request that you provide third-party documentation within thirty 30 calendar days in order to resolve the conflict.  If you fail or refuse to provide third-party documentation where there is conflicting evidence, BPM does not have to provide you with the protections contained in this notice.

4

**Confidentiality**
BPM must keep confidential any information you provide related to the exercise of your rights under VAWA, including the fact that you are exercising your rights under VAWA.

BPM must not allow any individual administering assistance or other services on behalf of BPM (for example, employees and contractors) to have access to confidential information unless for reasons that specifically call for these individuals to have access to this information under applicable Federal, State, or local law.

BPM must not enter your information into any shared database or disclose your information to any other entity or individual.  BPM, however, may disclose the information provided if:

- You give written permission to BPM to release the information on a time limited basis.
- BPM needs to use the information in an eviction or termination proceeding, such as to evict your abuser or perpetrator or terminate your abuser or perpetrator from this program.
- A law requires BPM or your landlord to release the information.

VAWA does not limit BPM's duty to honor court orders about access to or control of the property. This includes orders issued to protect a victim and orders dividing property among household members in cases where a family breaks up.

**Reasons a Tenant Eligible for Occupancy Rights under VAWA May Be Evicted or Participation in the Housing Program May Be Terminated**
You can be evicted and your participation in the housing program can be terminated for serious or repeated lease violations that are not related to domestic violence, dating violence, sexual assault, or stalking committed against you.  However, BPM cannot hold tenants who have been victims of domestic violence, dating violence, sexual assault, or stalking to a more demanding set of rules than it applies to tenants who have not been victims of domestic violence, dating violence, sexual assault, or stalking.

The protections described in this notice might not apply, and you could be evicted and your participation in the housing program terminated, if BPM can demonstrate that not evicting you or terminating your assistance would present a real physical danger that:

1)  Would occur within an immediate time frame, and
2)  Could result in death or serious bodily harm to other tenants or those who work on the property.

If BPM can demonstrate the above, BPM should only terminate your participation in the housing program or evict you if there are no other actions that could be taken to reduce or eliminate the threat.

**Other Laws**
VAWA does not replace any Federal, State, or local law that provides greater protection for victims of domestic violence, dating violence, sexual assault, or stalking.  You may be entitled to

5

additional housing protections for victims of domestic violence, dating violence, sexual assault, or stalking under other Federal laws, as well as under State and local laws.

**Non-Compliance with The Requirements of This Notice**
You may report a covered housing provider's violations of these rights and seek additional assistance, if needed, by contacting or filing a complaint with your local HUD Field Office at www.hud.gov.

**For Additional Information**
You may view a copy of HUD's final VAWA rule at https://www.federalregister.gov/documents/2016/11/16/2016-25888/violence-against-women-reauthorization-act-of-2013-implementation-in-hud-housing-programs.

Additionally, BPM must make a copy of HUD's VAWA regulations available to you if you ask to see them.

For questions regarding VAWA, please contact the management office.

For help regarding an abusive relationship, you may call the National Domestic Violence Hotline at 1-800-799-7233 or, for persons with hearing impairments, 1-800-787-3224 (TTY). You may also contact local organizations.

For tenants who are or have been victims of stalking seeking help may visit the National Center for Victims of Crime's Stalking Resource Center at https://www.victimsofcrime.org/our-programs/stalking-resource-center.

For help regarding sexual assault, you may contact National Sexual Violence Resource Center at http://www.nsvrc.org/.

Victims of stalking seeking help may contact the National Center for Victims of Crime's Stalking Resource Center at https://www.victimsofcrime.org/our-programs/stalking-resource-center.

**Attachment:**  HUD–5382 Certification form

**CERTIFICATION OF
DOMESTIC VIOLENCE,
DATING VIOLENCE,
SEXUAL ASSAULT, OR STALKING,
AND ALTERNATE DOCUMENTATION**

**U.S. Department of Housing
and Urban Development**

OMB Approval No. 2577-0286

**Purpose of Form:** The Violence Against Women Act ("VAWA") protects applicants, tenants, and program participants in certain HUD programs from being evicted, denied housing assistance, or terminated from housing assistance based on acts of domestic violence, dating violence, sexual assault, or stalking against them. Despite the name of this law, VAWA protection is available to victims of domestic violence, dating violence, sexual assault, and stalking, regardless of sex, gender identity, or sexual orientation.

**Use of This Optional Form:** If you are seeking VAWA protections from your housing provider, your housing provider may give you a written request that asks you to submit documentation about the incident or incidents of domestic violence, dating violence, sexual assault, or stalking.

In response to this request, you or someone on your behalf may complete this optional form and submit it to your housing provider, or you may submit one of the following types of third-party documentation:

(1) A document signed by you and an employee, agent, or volunteer of a victim service provider, an attorney, or medical professional, or a mental health professional (collectively, "professional") from whom you have sought assistance relating to domestic violence, dating violence, sexual assault, or stalking, or the effects of abuse. The document must specify, under penalty of perjury, that the professional believes the incident or incidents of domestic violence, dating violence, sexual assault, or stalking occurred and meet the definition of "domestic violence," "dating violence," "sexual assault," or "stalking" in HUD's regulations at 24 CFR 5.2003.

(2) A record of a Federal, State, tribal, territorial or local law enforcement agency, court, or administrative agency; or

(3) At the discretion of the housing provider, a statement or other evidence provided by the applicant or tenant.

**Submission of Documentation:** The time period to submit documentation is 14 business days from the date that you receive a written request from your housing provider asking that you provide documentation of the occurrence of domestic violence, dating violence, sexual assault, or stalking. Your housing provider may, but is not required to, extend the time period to submit the documentation, if you request an extension of the time period. If the requested information is not received within 14 business days of when you received the request for the documentation, or any extension of the date provided by your housing provider, your housing provider does not need to grant you any of the VAWA protections. Distribution or issuance of this form does not serve as a written request for certification.

**Confidentiality:** All information provided to your housing provider concerning the incident(s) of domestic violence, dating violence, sexual assault, or stalking shall be kept confidential and such details shall not be entered into any shared database. Employees of your housing provider are not to have access to these details unless to grant or deny VAWA protections to you, and such employees may not disclose this information to any other entity or individual, except to the extent that disclosure is: (i) consented to by you in writing in a time-limited release; (ii) required for use in an eviction proceeding or hearing regarding termination of assistance; or (iii) otherwise required by applicable law.

Form **HUD-5382**
**(06/2017)**

**TO BE COMPLETED BY OR ON BEHALF OF THE VICTIM OF DOMESTIC VIOLENCE, DATING VIOLENCE, SEXUAL ASSAULT, OR STALKING**

1.  **Date the written request is received by victim:** _____

2.  **Name of victim:** _____

3.  **Your name (if different from victim's):** _____

4.  **Name(s) of other family member(s) listed on the lease:** _____

_____

5.  **Residence of victim:** _____

6.  **Name of the accused perpetrator (if known and can be safely disclosed):** _____

_____

7.  **Relationship of the accused perpetrator to the victim:** _____

8.  **Date(s) and times(s) of incident(s) (if known):** _____
_____

10.  **Location of incident(s):** _____

| In your own words, briefly describe the incident(s): |
| --- |
| _____ |
| _____ |
| _____ |
| _____ |

This is to certify that the information provided on this form is true and correct to the best of my knowledge and recollection, and that the individual named above in Item 2 is or has been a victim of domestic violence, dating violence, sexual assault, or stalking. I acknowledge that submission of false information could jeopardize program eligibility and could be the basis for denial of admission, termination of assistance, or eviction.

Signature _____Signed on (Date) _____

**Public Reporting Burden:**  The public reporting burden for this collection of information is estimated to average 1 hour per response.  This includes the time for collecting, reviewing, and reporting the data.  The information provided is to be used by the housing provider to request certification that the applicant or tenant is a victim of domestic violence, dating violence, sexual assault, or stalking.  The information is subject to the confidentiality requirements of VAWA. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid Office of Management and Budget control number.

| VIOLENCE, DATING VIOLENCE OR STALKING | U.S. Department of Housing and Urban Development | OMB Approval No. 2502-0204 |

**U.S. Department of Housing and Urban Development**
Office of Housing

# LEASE ADDENDUM

## VIOLENCE AGAINST WOMEN AND JUSTICE DEPARTMENT REAUTHORIZATION ACT OF 2005

| TENANT | LANDLORD | UNIT NO. & ADDRESS |
|---|---|---|
| NORMAN PROPST | GUILD | 1346 4TH STREET SE #704 |

This lease addendum adds the following paragraphs to the Lease between the above referenced Tenant and Landlord.

**Purpose of the Addendum**

The lease for the above referenced unit is being amended to include the provisions of the Violence Against Women and Justice Department Reauthorization Act of 2005 (VAWA).

**Conflicts with Other Provisions of the Lease**

In case of any conflict between the provisions of this Addendum and other sections of the Lease, the provisions of this Addendum shall prevail.

**Term of the Lease Addendum**

The effective date of this Lease Addendum is 06/15/2024. This Lease Addendum shall continue to be in effect until the Lease is terminated.

**VAWA Protections**

1. The Landlord may not consider incidents of domestic violence, dating violence or stalking as serious or repeated violations of the lease or other "good cause" for termination of assistance, tenancy or occupancy rights of the victim of abuse.
2. The Landlord may not consider criminal activity directly relating to abuse, engaged in by a member of a tenant's household or any guest or other person under the tenant's control, cause for termination of assistance, tenancy, or occupancy rights if the tenant or an immediate member of the tenant's family is the victim or threatened victim of that abuse.
3. The Landlord may request in writing that the victim, or a family member on the victim's behalf, certify that the individual is a victim of abuse and that the Certification of Domestic Violence, Dating Violence or Stalking, Form HUD-91066, or other documentation as noted on the certification form, be completed and submitted within 14 business days, or an agreed upon extension date, to receive protection under the VAWA. Failure to provide the certification or other supporting documentation within the specified timeframe may result in eviction.

Tenant(s):                                    Landlord

_____              By: _____

_____              Date: _____

_____                   _____

_____                   _____

_____

Date: _____

Form **HUD-91067**
**(09/2008)**

NORMAN PROPST
HEAD OF HOUSEHOLD

SIGNED 6/12/2024 AT 7:09PM EDT

BPM ESIGNER
*Elizabeth Dixon*
SIGNED 6/14/2024 AT 4:13PM EDT