**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NORMAN PROPST, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BROOKFIELD PROPERTIES MULTIFAMILY, LLC,<br><br>Defendant. | Case No. 1:25-cv-00636-GMH |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF CONSENT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. FACTS AND PROCEDURAL HISTORY ........ 2

A. Factual Allegations. ........ 2

B. Procedural History. ........ 4

III. LEGAL STANDARD ........ 5

IV. TERMS OF THE PROPOSED SETTLEMENT ........ 6

A. The Settlement Fund and Monetary Relief. ........ 6

B. Injunctive Relief. ........ 7

C. Attorneys' Fees, Costs and Service Award. ........ 7

D. Release. ........ 7

E. Notice. ........ 8

V. THE COURT SHOULD GRANT PRELIMINARY APPROVAL ........ 8

A. Arm's-Length Negotiations. ........ 9

B. Terms of the Settlement in Relation to the Strengths of Plaintiff's Case. ........ 10

1. The Monetary Relief Recovered Is Significant. ........ 10

2. The Scope of the Release Is Reasonable. ........ 13

3. The Injunctive Relief Recovered Is Significant. ........ 15

C. Status of Litigation Proceedings at the Time of Settlement. ........ 15

D. Reaction of the Class. ........ 16

E. Opinion of Experienced Counsel. ........ 16

F. Class Counsel's Proposed Attorneys' Fees and Service Award are Reasonable ........ 17

VI. THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS ........ 19

A. Rule 23(a)(1) numerosity is met. ........ 19

B. Rule 23(a)(2) commonality is met. ........ 20

C. Rule 23(a)(3) typicality is met. .......... 21

D. Rule 23(a)(4) adequacy is met. .......... 22

E. Rule 23(b)(3) predominance is met. .......... 23

F. Rule 23(b)(3) superiority is met. .......... 23

**VII. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL** .......... 25

**VIII. THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.** .......... 26

A. The Notice Plan will provide notice to the vast majority of Class Members. .......... 27

B. The Notice Plan provides Class Members with the opportunity to opt out or object. .......... 29

C. CAFA Notice .......... 31

**IX. PROPOSED SCHEDULE** .......... 31

**X. CONCLUSION** .......... 32

# TABLE OF AUTHORITIES*

**Page(s)**

**Cases**


* *Alvarez v. Keystone Plus Constr. Corp.*,
303 F.R.D. 152 (D.D.C. 2014) .......... 8, 9, 19, 20, 21, 22, 23, 24

*Amchem Prods v. Windsor*,
521 U.S. 591 (1997) .......... 24

*Biao Wang v. Zymergen Inc.*,
No. 21-cv-06028-PCP, 2026 U.S. Dist. LEXIS 138243 (N.D. Cal. June 22, 2026) .......... 11

*Bird v. Garland*,
No. 1:19-cv-1581 (JMC) (D.D.C. Oct. 16, 2024) .......... 28

*Bynum v. D.C.*,
412 F. Supp. 2d 73 (D.D.C. 2006) .......... 26

*Castillo De Martinez v. Tier-One Prop. Servs., LLC*,
No. 23-cv-2339-LLA, 2025 U.S. Dist. LEXIS 27509 (D.D.C. Feb. 14, 2025) .......... 5

*Cohen v. Warner Chilcott Pub. Ltd. Co.*,
522 F. Supp. 2d 105 (D.D.C. 2007) .......... 16, 20

*Coleman v. Dist. of Columbia*,
306 F.R.D. 68 (D.D.C. 2015) .......... 23

*Forsyth. v. HP Inc.*,
No. 5:16-cv-04775-EJD (N.D. Cal. Nov. 3, 2023) .......... 29

*Geiser v. The Salvation Army*,
No. 1:22-cv-1968 (S.D.N.Y. May 10, 2023) .......... 29

*Gur-Ravantab v. Georgetown Univ.*,
No. 1:22-cv-01038-TNM, 2024 U.S. Dist. LEXIS 124542 .......... 18

*Hettinger v. Bozzuto Mgmt. Co.*,
CV 23-3687-JEB, 2026 U.S. Dist. LEXIS 157031 (D.D.C. July 15, 2026) .......... 21

*Howard v. Liquidity Servs.*,
322 F.R.D. 103 (D.D.C. 2017) .......... 22

*In re APA Assessment Fee Litig.*,
311 F.R.D. 8 (D.D.C. 2015) .......... 15


---

* Memorandum chiefly relies on these authorities.

*In re Black Farmers Discrimination Litig.*,
953 F. Supp. 2d 82 (D.D.C. 2013) ........................................................................ 17

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011)................................................................... 13

*In re Domestic Airline Travel Antitrust Litig.*,
322 F. Supp. 3d 64 (D.D.C. 2018) ........................................................... 26, 27, 29

*In re Lumber Liquidators, Inc.*,
952 F.3d 471 (4th Cir. 2020)................................................................................. 13

*In re Vitamins Antitrust Litig.*,
305 F. Supp. 2d 100 (D.D.C. 2004) ...................................................................... 5, 9

*Jones v. Chopra*,
No. 18-cv-2132-BAH, 2023 U.S. Dist. LEXIS 164699 (D.D.C. Sept. 15, 2023) ...................... 9

*Koz v. Kellogg Co.*,
No. 09-cv-1786-IEG, 2010 U.S. Dist. LEXIS 116924 (S.D. Cal. Oct. 24, 2010) .................... 15

*LeNorowitz v. Mosquito Squad Franchising, LLC*,
No. 3:20-cv-1922-OAW, 2024 U.S. Dist. LEXIS 222076 (D. Conn. Dec. 9, 2024)................ 13

*Mayhew v. KAS Direct, LLC*,
No. 16-cv-6981-VB, 2018 U.S. Dist. LEXIS 106680 (S.D.N.Y. June 26, 2018)..................... 15

*McCarthy v. Kleindienst*,
741 F.2d 1406 (D.C. Cir. 1984) ............................................................................. 23

*McFadden v. Nationstar Mortg. LLC*,
No. 1:20-cv-00166, (D.D.C. Apr. 25, 2024). ............................................................... 12

*Morin v. JPMorgan Chase Bank, N.A.*,
No. 17-cv-00249-APM, 2018 U.S. Dist. LEXIS 245803 (D.D.C. Aug. 17, 2018) ................. 18

*Osborne v. Capital City Mortg. Corp.*,
727 A.2d 322 (D.C. 1999)...................................................................................... 3

*Pigford v. Glickman*,
182 F.R.D. 341 (D.D.C. 1998)................................................................................ 21

*Prince v. Aramark Corp.*,
257 F. Supp. 3d 20 (D.D.C. 2017) .................................................................... 15, 17

*Radosti v. Envision EMI, LLC*,
717 F. Supp. 2d 37 (D.D.C. 2010) ........................................................................ 25

*Radosti v. Envision EMI, LLC*,
760 F. Supp. 2d 73 (D.D.C. 2011) .................................................................... 17, 18

*Richardson v. L'Oreal USA, Inc.*,
951 F. Supp. 2d 104 (D.D.C. 2013) .................................................................... 5, 6

*Rogers v. Lumina Solar, Inc.*,
No. 18-cv-2128-KBJ, 2020 U.S. Dist. LEXIS 108259 (D.D.C. June 19, 2020)...................... 11

*Stephens v. Farmers Rest. Grp.*,
329 F.R.D. 476 (D.D.C. 2019) .................................................................... 16, 17, 19

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) .................................................................... 17

*Trombley v. Nat'l City Bank*,
759 F. Supp. 2d 20 (D.D.C. 2011) .................................................................... 11

*Valencia Rios v. Belvedere NRDE, LLC*,
No. 3:25-cv-00474-REP, (E.D. Va. Mar. 13, 2026) .................................................................... 12

*Wells v. Allstate Ins. Co.*,
210 F.R.D. 1 (D.D.C. 2002) .................................................................... 23

*Wells v. Allstate Ins. Co.*,
557 F. Supp. 2d 1 .................................................................... 18

*Zhang v. U.S. Citizenship & Immigration Servs.*,
344 F. Supp. 3d 32 (D.D.C. 2018) .................................................................... 20

**Statutes**

D.C. Code § 28-3901, *et seq.* .................................................................... 1

D.C. Code § 28-3905(k)(2)(A)(i) .................................................................... 11

D.C. Code § 42-3501.01, *et seq.* .................................................................... 20

D.C. Code § 42-3502.22(b)(1) .................................................................... 3

D.C. Code § 42-3505.10(b-2)(1) .................................................................... 4, 20

**Rules**

* Fed. R. Civ. P. 23, *et seq.* .................................................................... 5, 21, 22, 23, 24

**Regulations**

D.C.M.R. § 14-600.3 .................................................................... 3, 20

*Rule on Unfair or Deceptive Rental Housing Fee Practices,* 91 Fed. Reg. 12325 (proposed Mar. 13, 2026) ........ 12

**Other Authorities**

Newberg on Class Actions § 3:31 (5th ed. 2013) ........ 21

William B. Rubenstein, Newberg on Class Actions § 13:10 (5th ed. 2014) ........ 5

# I. INTRODUCTION

Plaintiff Norman Propst, a tenant, filed this class action in December 2024 against property manager, Defendant Brookfield Properties Multifamily, LLC ("Defendant" or "BPM"), challenging BPM's practice of charging what Plaintiff characterizes as "junk fees" to tenants across its rental properties in Washington, D.C. Compl. at 2. BPM is a property management company that manages five large apartment buildings in D.C. with over 870 rental units in all, and Plaintiff seeks to represent classes of similarly situated tenants who have been subjected to similar fees.

Plaintiff's claims arise under the D.C. Consumer Protection Procedures Act ("CPPA"). D.C. Code § 28-3901, *et seq*. Plaintiff's broadest claim centers on disclosure, contending that BPM failed to disclose numerous alleged "junk fees" to tenants at the time they filed their rental applications. Plaintiff contends that only disclosing a unit's "Base Rent"—and not the assortment of fees that were required on top (the "Fees")—obscured the true price of an apartment. In addition, Plaintiff also asserts discrete challenges to a limited subset of fees as substantively prohibited by District statutes and regulations.

The parties have now finalized a class Settlement Agreement to resolve the claims at issue in this action, which establishes a $1,100,000 non-reversionary settlement fund, to be distributed amongst 2,431 Class Members who were tenants at a BPM-managed property from December 11, 2021, through April 30, 2026. This result provides substantial monetary relief, amounting to an average of $452.49 per member, where in exchange for the receipt of such consideration, members will release claims against BPM relating to any Fees added on top of a unit's Base Rent. It also provides substantial injunctive relief, requiring BPM to implement enhanced disclosures on its application forms and websites that disclose, itemize, and explain the purpose of any additional fees charged on top of a unit's Base Rent. This result was reached after over a year-and-a-half of

litigation, which has involved substantial motions practice, where BPM has both moved to dismiss this action and strike class allegations (both motions remain pending). In light of the risks and costs associated with continued litigation, the Settlement Agreement provides an excellent result for Class Members that is reasonable, fair, and adequate.

Under Federal Rule of Civil Procedure 23, Plaintiff now moves for preliminary approval of the proposed class action settlement. Plaintiff requests that the Court preliminarily certify the Settlement Class and preliminarily approve the Settlement Agreement by entering the Proposed Order Preliminarily Approving Settlement and Directing Notice to Class. A final motion and proposed order regarding final approval of the fairness of the proposed class action settlement will be submitted after the Class Members have received notice providing them with an opportunity to object or opt-out, and before the Court's Final Approval Hearing.

For the reasons below, the proposed class Settlement Agreement is reasonable, fair, and adequate, and the Court should grant preliminary approval.

## II. FACTS AND PROCEDURAL HISTORY

### A. Factual Allegations.

BPM is a housing provider that manages rental apartment buildings in D.C. Compl. ¶ 5 (cited to hereinafter as "¶ __"). BPM manages five large apartment buildings in D.C. with over 870 rental units in all, which include: (1) "Guild," located at 1346 4th Street SE (where Plaintiff was a tenant from approximately July 2024 through February 2026); (2) "Estate," located at 3 Tingey Square SE; (3) "Twelve12," located at 1212 4th Street SE; (4) "Foundry Lofts," located at 301 Tingey Street SE; and (5) "Vela," located at 1300 Yards Place SE. Joint Decl. ¶ 12.

***Drip-Pricing Claim.*** Plaintiff's broadest claim is a "Drip-Pricing Claim," which alleges that BPM failed to disclose numerous "junk fees" to tenants in violation of the D.C. Rental Housing

Act's requirement that landlords disclose a unit's "rent" "[a]t the time a prospective tenant files an application to lease any rental unit." D.C. Code § 42-3502.22(b)(1), (A).[2] While the Complaint focuses on BPM's alleged failure to disclose altogether distinct service fees paid to a third-party utility billing company, ¶ 61.e, the Drip-Pricing Claim could plausibly be expanded to cover all Fees that were not disclosed "[a]t the time" of application as required by the RHA. D.C. Code § 42-3502.22(b)(1). In addition to this broad challenge as to disclosure, Plaintiff specifically challenges a discrete subset of the fees detailed below.

***Common Area Electricity / Trash Claim.*** Plaintiff specifically challenges the legality of two specific fees under the D.C. Housing Code: (i) a variable "Common Area Electricity" fee, which covers electric utilities used in common areas, as well as unit-specific HVAC-related electricity used by the tenant; and (ii) a fee for trash services. ¶¶ 19-20. Plaintiff contends that because these utilities are within Brookfield's control, Brookfield's attempt to shift those costs to him violates the D.C. Housing Code requirement that they be "furnished" by the landlord. *See* D.C.M.R. § 14-600.3 ("Where a utility (such as water, electricity, gas or other fuels, or sewer or refuse service) is the responsibility of, or under the control of, the owner or licensee of any residential building, the utility shall be furnished and maintained by the owner or licensee in the quantities needed for normal occupancy.") (emphasis added).

***Service Fee Claim.*** Plaintiff specifically challenges monthly "service fees" associated with utility billing, which ranged between $4.00–$10.00/month. ¶¶ 19, 28. Plaintiff contends that the Service Fees violate an RHA provision prohibiting housing providers from "charg[ing] a fee . . .

[2] Plaintiff asserts this and several other CPPA subclaims on the basis of BPM's alleged predicate violation of the RHA. *See Osborne v. Capital City Mortg. Corp.*, 727 A.2d 322, 325-26 (D.C. 1999) ("[T]he CPPA's extensive enforcement mechanisms apply not only to the unlawful trade practices proscribed by [the CPPA], but to all other statutory and common law prohibitions.").

for services required of the housing provider to maintain a unit in a condition consistent with the implied warranty of habitability and [the housing code].” D.C. Code § 42-3505.10(b-2)(1).

***Holding Deposit Claim.*** Finally, Plaintiff alleges that BPM charged him a $50 “Application Fee” and a $250 “Holding Deposit” at the time he filed his rental application and before his application was approved. ¶ 10. Plaintiff contends that the $250 “Holding Deposit” is illegal under the RHA, which caps application-related fees to $50, and requires “holding deposits” to be paid “after” a housing provider approves the tenant’s application. D.C. Code § 42-3505.10(b)(1)-(3); D.C. Code § 42-3501.03(13A).

**B. Procedural History.**

Plaintiff filed this action in D.C. Superior Court on December 11, 2024. *See* ECF 1, Def.’s Notice of Removal. Defendant removed this case to federal court on March 4, 2025. *Id.* Defendant then filed a Motion to Dismiss pursuant to Rule 12(b)(6), ECF 10, which was fully briefed on April 25, 2025, and remains pending.

In addition, Defendant also filed a Motion to Strike Class Allegations, ECF 9, contending that the form lease term copied below prohibited Plaintiff from proceeding in this case on a classwide basis. The Motion to Strike was also fully briefed on April 25, 2025, and remains pending.

> **Nonjury Class Action Waiver:** Resident agrees that Resident will not participate in any nonjury class action claims against Landlord or Landlord’s representatives. Resident must file any claim against us individually, and Resident expressly waives Resident’s ability to bring, represent, join or otherwise maintain a nonjury class action, collective action or similar proceeding against Landlord in any forum.
>
> RESIDENT UNDERSTANDS THAT, WITHOUT THIS WAIVER, RESIDENT COULD BE A PARTY IN A NONJURY CLASS ACTION LAWSUIT. BY SIGNING THIS LEASE, RESIDENT ACCEPTS THIS WAIVER AND CHOOSES TO HAVE ANY CLAIMS DECIDED INDIVIDUALLY. THE PROVISIONS OF THIS PARAGRAPH 35 – ADDITIONAL PROVISIONS – NONJURY CLASS ACTION WAIVER SHALL SURVIVE THE TERMINATION OR EXPIRATION OF THIS LEASE.

In December 2025, with both Motions still pending, the parties began negotiating the prospect of settlement. The parties reached substantial agreement on a framework for settlement

in March 2026, and filed a Joint Motion to Stay the case to allow for continued settlement negotiations, ECF 21, which was granted by the Court in a March 23, 2026, Minute Order. Over the course of the next four months, the parties negotiated and finalized a written settlement agreement (the "Settlement Agreement"), which was fully executed on July 9, 2026.

## III. LEGAL STANDARD

A district court's review of a proposed class settlement proceeds in three primary steps. *Castillo De Martinez v. Tier-One Prop. Servs., LLC*, No. 23-cv-2339-LLA, 2025 U.S. Dist. LEXIS 27509, at *9 (D.D.C. Feb. 14, 2025). "First, the parties present a proposed settlement agreement to the court for so-called preliminary approval." *Id.* (quoting William B. Rubenstein, *Newberg on Class Actions* § 13:10 (5th ed. 2014)). "Second, if the court does preliminarily approve the settlement (and conditionally certify the class), notice is sent to the class describing the terms of the proposed settlement and explaining class members' options with respect to the settlement agreement, including the right to object to the proposed settlement." *Id.* (citing Rubenstein, *Newberg on Class Actions* § 13:10). "Third, the court holds a hearing and may give final approval to the agreement only upon a 'finding that it is fair, reasonable, and adequate.'" *Id.* (quoting Fed. R. Civ. P. 23(e)(2)).

"The Rule 23 requirements are fully consistent with the long-standing judicial attitude favoring class action settlements." *In re Vitamins Antitrust Litig.*, 305 F. Supp. 2d 100, 103 (D.D.C. 2004). Courts "generally grant preliminary approval of a class action settlement if it appears to fall within the range of possible approval and does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." *Richardson v. L'Oreal USA, Inc.*, 951 F.

Supp. 2d 104, 106 (D.D.C. 2013) (quotations omitted). Approval of a proposed class settlement "lies within the sound discretion of the court." *Id.* (quotation omitted).

## IV. TERMS OF THE PROPOSED SETTLEMENT

### A. The Settlement Fund and Monetary Relief.

The Settlement Agreement establishes a $1.1 million non-reversionary Settlement Fund for the benefit of the Settlement Class. Settlement Agreement § 4. The Settlement Fund will be the sole source from which all Awards to Class Members, any Attorneys' Fee Awards, and any Service Award will be paid. *Id.* § 4.1(a).

Under the terms of the Settlement Agreement, within thirty (30) days after the Court enters a Preliminary Approval Order, Defendant will cause $1.1 million to be deposited into an Escrow Account. *Id.* § 4.1(c). Defendant shall separately pay all Settlement Administration Costs, including the costs of notice and administration, which shall not be deducted from the Settlement Fund. *Id.* §§ 4.1(b), 4.7. The Settlement Administrator will be responsible for calculating the amounts payable to members of the Settlement Class according to the Settlement Agreement's allocation formula. *Id.* §§ 4.1(e), 4.2.

Pursuant to the Settlement Agreement, the Net Settlement Fund will be distributed under a two-tier, adjusted pro rata formula keyed to the amount of fees charged to each apartment unit ("Household"). *Id.* § 4.2(a). Households charged less than $200 in certain fees between December 1, 2021 and March 24, 2026, will receive a "Base Award." Households charged $200 or more will receive an "Enhanced Award" equal to 2.5 times the Base Award. *Id.* §§ 4.2(b)-(c). Each Household's Award will be further divided pro rata among the Class Members in that Household. *Id.* § 4.2(d).

In order to receive a Settlement Award, Class Members will not need to submit a claim form. Instead, the Settlement Administrator shall calculate each Award from BPM's records and

distribute it by check. *Id.* §§ 4.2(e), 4.3(a). Any checks that remain uncashed twelve (12) months after issuance shall be presumed abandoned and will be deposited with the District of Columbia Office of the Chief Financial Officer's Unclaimed Property Unit, consistent with D.C. Code § 41-151.01, *et seq*., preserving Class Members' ability to recover their Awards through the unclaimed-property process. *Id.* § 4.3(b).

**B. Injunctive Relief.**

In addition to the above monetary relief, the Settlement Agreement requires BPM, within ten (10) business days after the Execution Date, to update the websites and application processes for each of the five D.C. Properties BPM manages in order to incorporate enhanced disclosures concerning the at-issue Fees. *Id.* § 4.8. These disclosures shall substantially reflect the forms attached to the Settlement Agreement as Exhibits A through E. *Id.* The disclosures shall itemize the amount and explain the purpose of the additional Fees charged on top of a unit's Base Rent, directly addressing the disclosure conduct at the heart of the Drip-Pricing Claim.

**C. Attorneys' Fees, Costs and Service Award.**

Plaintiff's Counsel's fees and litigation costs will be paid from the Settlement Amount, as the Court may so order in response to an application from Plaintiff's counsel. *Id.* § 4.5 Additionally, the Settlement Agreement provides that Plaintiff Norman Propst may seek a Service Award not to exceed $5,000 for his service as class representative, which will likewise be payable from the Settlement Fund. *Id.* § 4.6. Both requests are subject to the Court's approval and will be addressed in Class Counsel's forthcoming fee application.

**D. Release.**

In exchange for the relief described above, and effective on the Effective Final Judgment Date, Plaintiff and the Class Members will release the BPM Release Parties from the Class

Released Claims—that is, claims that relate to, arise from, or are connected to the Fees or the pricing, charging, disclosure, or collection of any Fees. *Id.* § 5.1. However, the Release is expressly limited to Fee-related claims and does not extend to, for example, claims concerning the physical condition of a dwelling unit, personal or bodily injury, or Base Rent and Security Deposits. *Id.* § 5.1(a). The Settlement Agreement separately provides that BPM will forbear from seeking, in any lawsuit or eviction proceeding against a Class Member, any Fees first charged or invoiced on or before January 31, 2026. *Id.* § 5.2.

### E. Notice.

The Parties have retained Kroll Settlement Administration LLC ("Kroll"), a neutral settlement administrator, to implement notice, administer the Settlement, and establish a Settlement Website. *Id.* § 6.1. Notice and administration costs shall be paid separately by BPM and will not reduce the Settlement Fund. *Id.* § 4.7. The Administrator shall provide direct notice to the Settlement Class by both postcard mail and email, informing each member of the right to opt out of or object to the Settlement. *Id.* § 6.3. The notice plan, opt-out procedure, and objection procedure are described further in Section VIII below.

## V. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

Rule 23(e) requires the court to approve class settlements that bind class members "only after a hearing and on finding that it is fair, reasonable, and adequate." *Alvarez v. Keystone Plus Constr. Corp.*, 303 F.R.D. 152, 159 (D.D.C. 2014) (Brown-Jackson, J.). While there is "no single test" for the fair, reasonable, and adequate standard in this Circuit, "courts have considered a variety of factors, including: (a) whether the settlement is the result of arm's-length negotiations; (b) the terms of the settlement in relation to the strengths of plaintiffs' case; (c) the status of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of

experienced counsel." *Id.* (quotation omitted); *see also Jones v. Chopra*, No. 18-cv-2132-BAH, 2023 U.S. Dist. LEXIS 164699, at *20 (D.D.C. Sept. 15, 2023) (same).

Each of these factors supports granting preliminary approval of the Settlement Agreement.

**A. Arm's-Length Negotiations.**

"A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re Vitamins*, 305 F. Supp. 2d at 104 (quotation omitted); *see also Alvarez*, 303 F.R.D. at 163 (same).

Here, the parties negotiated the proposed settlement over the course of approximately seven months, with negotiations beginning back in December 2025. Joint Decl. ¶ 16. These negotiations involved robust informal discovery, where BPM provided Class Counsel with data regarding the number of putative Class Members and a sampling of Fees they had been charged during the relevant period. *Id.* ¶ 17. Both parties are represented by capable counsel who have extensive experience regarding litigating and resolving consumer class actions. *Id.* ¶¶ 18, 26-36. And a settlement at this early juncture, while BPM's Motion to Dismiss and Motion to Strike Class Allegations remain pending, reflects a fair and reasonable recovery considering the risks of prolonged litigation (detailed in the following section) and before either side has incurred significant attorneys' fees in connection with discovery, class certification, summary judgment, and/or trial. *Id.* ¶¶ 26-27.

As these facts demonstrate that the Settlement Agreement was reached through arm's-length negotiations, a presumption of fairness, adequacy, and reasonableness should attach. *See Alvarez*, 303 F.R.D. at 163 (finding factors such as that negotiations were handled by experienced counsel, that "robust informal discovery" had taken place, and that early juncture "before either

side has incurred significant attorneys' fees" supported the conclusion that settlement was fair and "product of legitimate negotiation on behalf of both sides").

**B. Terms of the Settlement in Relation to the Strengths of Plaintiff's Case.**

**1. The Monetary Relief Recovered Is Significant.**

The Settlement Agreement establishes a non-reversionary, common fund of $1,100,000 (the "Common Fund"). Settlement Agreement § 4.1. The Settlement Agreement establishes a two-tier system that divides the Net Settlement Fund on an adjusted *pro rata* basis that sets a "Base Award" for households charged less than $200 in certain fees, and an "Enhanced Award" of 2.5 times the Base Award for households charged more than $200 in certain fees. *Id.* § 4.2. The Base and Enhanced Awards are to be awarded by household, and divided *pro rata* by the number of tenants in the household (i.e., a household with a single tenant would receive the full Enhanced Award, whereas a household with two cotenants would divide the Enhanced Award evenly). *Id.* Broadly speaking, this two-tier system based on households is rational because it links Class Members' recovery to the Fees their rental unit was charged, recognizing that households charged more in Fees may have a greater damages claim. At the same time, the Base Award established by the two-tier system establishes a recovery floor, which recognizes that all Class Members have claims (such as the Disclosure Claim) that are more dependent on a course of conduct (i.e., whether certain Fees were disclosed), and that are not as dependent on the total amount of Fees they were charged.

The expected amounts of the per-household Base and Enhanced Awards before attorneys' fees and costs are provided in the table below.

| | |
|---|---|
| Enhanced Award (per Household) | $598.61 |
| Base Award (per Household) | $239.44 |

These Base and Enhanced Awards are a substantial monetary recovery when compared to the benchmark of the CPPA's statutory damages amount of $1,500. *See* D.C. Code § 28-3905(k)(2)(A)(i). Compared against that benchmark, the Enhanced and Base Awards are 40% and 16%, respectively, of the statutory damages award amount. Courts in this District routinely find distributions that reflect similar percentages of potential recovery as fair, adequate, and reasonable. *See, e.g.*, *Trombley v. Nat'l City Bank*, 759 F. Supp. 2d 20, 25 (D.D.C. 2011) (granting preliminary approval of class settlement that recovered between 17% and 24% of the potential recovery at trial); *Rogers v. Lumina Solar, Inc.*, No. 18-cv-2128-KBJ, 2020 U.S. Dist. LEXIS 108259, at *25 (D.D.C. June 19, 2020) (granting preliminary approval of TCPA class settlement that capped per-member *pro rata* recovery at $100, which was 20% of the $500 in statutory damages available under the TCPA) (collecting cases); *Biao Wang v. Zymergen Inc.*, No. 21-cv-06028-PCP, 2026 U.S. Dist. LEXIS 138243, at *16-17 (N.D. Cal. June 22, 2026) (preliminarily approving class settlement that recovered 28% of estimated damages and noting the median settlement as a percentage of statutory damages in Securities Act cases in 2024 was 7.1%).

Such a recovery is particularly substantial considering the risks inherent in proceeding with the litigation. Because Plaintiff's claims primarily turn on matters of statutory interpretation, there is a binary risk element presented on each claim even in proceeding to resolution of the pending Motion to Dismiss. BPM's pending Motion to Strike also presents a binary risk element as to whether this case can proceed as a class action in the first instance. Thus, in light of these risks, the monetary recovery secured by the Settlement Agreement is fair, adequate, and reasonable.

It is also substantial in comparison to awards in similar cases. At its core, this case is a tenant consumer protection action challenging the disclosure and legality of various alleged "junk fees." This area of law is developing and novel, as reflected by a recent March 2026 notice issued

by the U.S. Federal Trade Commission seeking public comment on "a rulemaking proceeding to address unfair or deceptive acts or practices relating to advertised rent and other fees and charges in the rental housing industry." *Rule on Unfair or Deceptive Rental Housing Fee Practices*, 91 Fed. Reg. 12325 (proposed Mar. 13, 2026). The novelty of this case's claims is further underscored by the fact that they arise specifically under unique D.C. tenant protection statutes.

That said, the comparators that do exist further confirm the fairness of the settlement in this case and the reasonableness of Class Counsel's fee request. For example, *Valencia Rios v. Belvedere NRDE, LLC* involved a class of Virginia tenants who similarly sued several property managers "challenging their use of 'junk fees' to boost their profits" under Virginia consumer protection law. *See* Pls.' Mot for Prelim. Approval (ECF 84), No. 3:25-cv-00474-REP, (E.D. Va. Mar. 13, 2026), appended as Exhibit 7 to Joint Decl. *Valencia Rios* settled for a common fund of $3,862,000, to be distributed across 24,858 class members, which amounts to an average of $155.36 per class member. *Id.* at 3, 5.[3] Similarly, in *McFadden v. Nationstar Mortgage LLC*, this Court approved a settlement for $250 per violation under the CPPA in a case involving the charging of junk fees to pay a consumer's mortgage over the phone. *McFadden v. Nationstar Mortg. LLC*, No. 1:20-cv-00166, Pls.' Mem. Supp. Mot. for Preliminary Approval of Class Settlement at 17 (D.D.C. Sept. 28, 2023), preliminarily approved, Order (D.D.C. Nov. 8, 2023), and finally approved, Final Judgment and Order (D.D.C. Apr. 25, 2024). Here, the average recovery per class member of $452.49 is comparable to, or exceeds, those amounts.

Finally, the Settlement Agreement's establishment of a non-reversionary common fund further supports a finding of fairness, adequacy, and reasonableness. Such a structure ensures that

[3] On April 16, 2026, the court granted preliminary approval of the *Valencia Rios* class settlement. *See* Order Granting Preliminary Approval (ECF 90), appended as Exhibit 8 to Joint Decl. Final approval was granted on August 24, 2026. Minute Entry (ECF 105).

Class Members will receive monetary relief in cash, which presents none of the fairness concerns implicated by settlements where compensation takes more limited forms such as payments in coupon or in-kind benefits. *See In re Lumber Liquidators, Inc.*, 952 F.3d 471, 489 (4th Cir. 2020) (observing concerns that coupon settlements "require class members to do business with [defendant] in the future"). The non-reversionary nature of the common fund also eliminates the potential for misaligned incentives to minimize distribution of Class Member awards, unlike reversionary funds that some courts have held "make it difficult for courts to ascertain" the fairness of a proposed settlement. *LeNorowitz v. Mosquito Squad Franchising, LLC*, No. 3:20-cv-1922-OAW, 2024 U.S. Dist. LEXIS 222076, at *6 (D. Conn. Dec. 9, 2024). It also bears emphasis that Class Members do not need to even submit a claim to receive a payment pursuant to the Settlement Agreement, as the Administrator will calculate each Class Member's award, which will be distributed via a paper check. Settlement Agreement § 4.2–4.3; *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1351 (S.D. Fla. 2011) ("The absence of a claims-made process further supports the conclusion that the Settlement is reasonable" because "Class Members will receive the benefit automatically, without needing to fill out any claim form or indeed to take any action whatsoever."). And any uncashed checks will be deposited with a District of Columbia governmental agency responsible for administering unclaimed property, which would allow Class Members who missed the window on cashing their checks to nevertheless recover their award through the unclaimed property process. *Id.* § 4.3(b). Such a structure where all a Class Member needs to do is cash a check, weighs in favor of granting preliminary approval.

**2. The Scope of the Release Is Reasonable.**

In exchange for monetary relief, Class Members will be releasing all claims against BPM that "relate to . . . the pricing, charging, disclosure, or collection of any Fees." Settlement

Agreement § 5.1(a).[4] In effect, the release applies to any Class Members' claims against BPM relating to the Fees—but not Base Rent. *See* Settlement Agreement § 5.1(a) ("For the avoidance of doubt, the Class Released Claims do not include claims relating to: (i) the physical condition of a dwelling unit or common area, including . . . traditional habitability-related conditions that do not arise from or relate to the Fees, (ii) personal injury, bodily injury, or safety-related claims of any kind, and/or (iii) Base Rent and Security Deposits, including the return thereof."). By excluding such claims from the scope of the release, the Settlement Agreement preserves Class Members' claims relating to more bread-and-butter tenant matters that are outside the scope of this case, such as disputes over Base Rent, habitability, and personal injury. Structuring the release in this manner is reasonable and aligned with the scope of this case. This case was a challenge related to fees, and a release of claims relating to fees is appropriate.

[4] The release term provides in full: "Upon the Effective Final Judgment Date, Plaintiff, each Settlement Class Member, and each of their related individuals and entities (including, but not limited to, Plaintiff's and Settlement Class Members' spouses and former spouses, and their present, former, and future respective administrators, agents, assigns, attorneys, executors, heirs, partners, predecessors-in-interest, and successors) (collectively, the "Class Release Parties"), shall forever release and discharge the BPM Release Parties from any and all rights, duties, obligations, claims, demands, actions, causes of action, damages, costs, expenses, or liabilities, whether arising under local, state, or federal law, whether by statute, contract, common law, or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, matured or unmatured, accrued or unaccrued, apparent or unapparent, which the Class Release Parties ever had, now have, or hereafter may have against the BPM Release Parties from the beginning of time and ending seven (7) days after the Execution Date that relate to, arise from, or are in any way connected to, concerning, or touching on Fees or the pricing, charging, disclosure, or collection of any Fees ("Class Released Claims"). For the avoidance of doubt, the Class Released Claims do not include claims relating to: (i) the physical condition of a dwelling unit or common area, including claims alleging property damage, personal property damage, water intrusion, mold, structural defects, defective building systems, or other traditional habitability-related conditions that do not arise from or relate to the Fees, (ii) personal injury, bodily injury, or safety-related claims of any kind, and/or (iii) Base Rent and Security Deposits, including the return thereof. These examples are not intended to be exhaustive, but rather to illustrate the types of claims that are unrelated to the Fees and thus fall outside the definition of the Class Released Claims."

**3. The Injunctive Relief Recovered Is Significant.**

The Settlement Agreement also requires BPM to "incorporate enhanced disclosures concerning the Fees" on its websites and in the application processes for each Property. Settlement Agreement § 4.8. These disclosures are detailed and granular, itemizing both the amount of each Fee a tenant can expect to pay, as well as the purpose of the Fee. *Id.* Exs. A-E. Where, as here, a core claim (the Drip-Pricing Claim) turns on the alleged failure to disclose the Fees, securing injunctive relief that requires enhanced disclosures delivers additional benefit to Class Members and provides further basis that the proposed settlement is fair, adequate, and reasonable. *See, e.g.*, *Mayhew v. KAS Direct, LLC*, No. 16-cv-6981-VB, 2018 U.S. Dist. LEXIS 106680, at *7 (S.D.N.Y. June 26, 2018) (granting preliminary approval of class settlement that "provides for changes to the labeling and advertising of [defendant's] products" to require listing of which ingredients were and were not organic); *see also Koz v. Kellogg Co.*, No. 09-cv-1786-IEG, 2010 U.S. Dist. LEXIS 116924, at *13 (S.D. Cal. Oct. 24, 2010) (granting preliminary approval of class settlement that "provides for injunctive relief to stop the alleged misrepresentations" that cereal improved children's attentiveness).

**C. Status of Litigation Proceedings at the Time of Settlement.**

"It is well-settled that further proceedings and formal discovery is not . . . necessarily required . . . for final approval of a proposed settlement." *Prince v. Aramark Corp.*, 257 F. Supp. 3d 20, 25 (D.D.C. 2017) (collecting cases). Courts in this District have granted preliminary approval to class action settlements reached before formal discovery—especially after the parties have briefed motions to dismiss that allow a respective evaluation of the strengths of the case. *See, e.g.*, *In re APA Assessment Fee Litig.*, 311 F.R.D. 8, 21 (D.D.C. 2015) (granting final approval to class settlement reached following resolution of motion to dismiss and before formal discovery

had begun); *Prince*, 257 F. Supp. 3d at 25-26 (granting final approval of class settlement even though it "settled fairly early in the litigation process" because the parties had opportunity to "conduct informal discovery" and settlement arrived "at a desirable point in the litigation for the parties to reach an agreement and to resolve these issues without further delay, expense, and litigation.").

Here, BPM's pending Motion to Dismiss and Motion to Strike Class Allegations presented a "desirable point in the litigation for the parties to reach an agreement" to resolve their respective litigation risk presented by the pending motions. The arguments presented in the pending Motions also allowed the parties to respectively evaluate the strengths and risks of their positions with an eye toward negotiating a reasonable resolution. Finally, notwithstanding the early stage of this case, the parties nevertheless engaged in informal discovery that was used to negotiate the material terms of the settlement relating to a sampling of Fees charged to Class Members. Joint Decl. ¶¶ 16-17. This round of informal discovery was followed by additional, more granular confirmatory discovery, which further shaped the terms of the final Settlement Agreement executed by the parties. *Id*. Thus, the stage of this case presents additional reason to grant preliminary approval.

**D. Reaction of the Class.**

As this case is still at the preliminary approval stage, "notice has not been sent to members of the Rule 23 class[] [and] the Court cannot yet assess those members' reaction." *Stephens v. Farmers Rest. Grp.*, 329 F.R.D. 476, 488 (D.D.C. 2019). The Court should thus defer evaluating this factor until the final approval stage, when that reaction will be known.

**E. Opinion of Experienced Counsel.**

"The opinion of experienced counsel 'should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement.'" *Id.* (quoting *Cohen v. Warner*

*Chilcott Pub. Ltd. Co.*, 522 F. Supp. 2d 105, 121 (D.D.C. 2007)). Here, Class Counsel are led by two attorneys with 30 years of consumer class action litigation experience. They and their team have examined the risks of proceeding with litigation against BPM's potential liability. Joint Decl. ¶ 26. Class Counsel have concluded that the Settlement Agreement provides substantial and meaningful monetary and injunctive relief that is fair, reasonable, and adequate and is in the best interests of the class. Joint Decl. ¶¶ 26-27. Thus, this factor too weighs in favor of granting preliminary approval. *See, e.g.*, *Stephens*, 329 F.R.D. at 489 (crediting similar testimony by Plaintiffs' counsel to weigh in favor of granting preliminary approval); *Prince*, 257 F. Supp. 3d at 26 (same).

**F. Class Counsel's Proposed Attorneys' Fees and Service Award are Reasonable.**

In the D.C. Circuit, "a percentage-of-the-fund method is the appropriate mechanism for determining the attorney fees award in common fund cases." *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993). The percentage-of-the-fund method "allows an attorney whose efforts created, increased or preserved a fund to recover from the fund the costs of his litigation, including attorneys' fees." *In re Black Farmers Discrimination Litig.*, 953 F. Supp. 2d 82, 88 (D.D.C. 2013) (quotations omitted). This approach "helps to align more closely the interests of the attorneys with the interests of the parties . . . by discouraging inflation of attorney hours and promoting efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system." *Id.*

In this case, should the Settlement Agreement be granted final approval, Class Counsel will apply for attorneys' fees, costs, and expenses not to exceed one-third of the Common Fund. Joint Decl. ¶ 24. Courts in this district routinely approve fee awards of one-third of a common fund as reasonable. *See, e.g.*, *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 78 (D.D.C. 2011)

(observing "a 33% award is consistent with the award in other common fund cases from this district" and awarding a one-third fee award in coupon—not common fund—settlement); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 7 (awarding fee award of 45% of the common fund); *Gur-Ravantab v. Georgetown Univ.*, No. 1:22-cv-01038-TNM, 2024 U.S. Dist. LEXIS 124542, at *12 ("Attorney fee awards that are one-third of the total recovery are generally considered reasonable.").

Finally, the Settlement Agreement's $5,000 Service Award for Mr. Propst should be granted preliminary approval. The purpose of a service award "is to compensate the named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Radosti*, 760 F. Supp. 2d at 79. Here, Mr. Propst took on the unique risks inherent in leading a class-action suit as a lone class representative, and was active in prosecuting the case, expending time and effort to provide Class Counsel with evidence to support his claims. *See Castillo De Martinez*, 2025 U.S. Dist. LEXIS 27509, at *23 ("[T]he court recognizes that leading a class-action suit always poses unique risks.") (quotation omitted). His Service Award is also a mere fraction (0.45%) of the Common Fund, so does not materially reduce payouts to other Class Members.

Mr. Propst's Service Award should thus be approved, as courts in this district have routinely done with similarly sized service awards. *See, e.g.*, *id.* (preliminarily approving $5,000 service awards to four class representatives, paid from $250,000 common fund); *Rogers*, 2020 U.S. Dist. LEXIS 108259, at *35 (granting final approval of $5,000 service award for one class representative, paid from $248,800 common fund); *Morin v. JPMorgan Chase Bank, N.A.*, No. 17-cv-00249-APM, 2018 U.S. Dist. LEXIS 245803, (D.D.C. Aug. 17, 2018) (granting service award of $5,000 to two class representatives in non-common fund case).

## VI. THE COURT SHOULD CONDITIONALLY CERTIFY THE SETTLEMENT CLASS

"Classes certified for settlement purposes only are a hallmark of class action litigation." *Alvarez*, 303 F.R.D. at 159. "When presented with a settlement-only class, a court must determine whether the proposed class satisfies the requirements of Federal Rule of Civil Procedure 23, with one exception: the court does not need to consider whether the case, if tried, would present intractable management problems, as it otherwise would have to determine when ruling on class certification under Rule 23(b)(3)(D)." *Id.* (quotation omitted).

Here, Plaintiff seeks provisional certification of the following Settlement Class:

> Any and all natural persons who executed a residential lease (including but not limited to lease renewals) with BPM for one or more of the D.C. Properties between December 11, 2021, through April 30, 2026, and were charged for Fees at any point during the period from December 11, 2021, through April 30, 2026.
>
> For the avoidance of doubt, the Settlement Class *excludes*: (i) any corporate applicants for residency at the D.C. Properties; and (ii) any current or former tenant of the D.C. Properties, including but not limited to any tenant occupying a designated affordable housing unit at one of the D.C. Properties, who was not charged for any of the Fees.

Settlement Agreement § 2.37. Defendant does not oppose certification of the Settlement Class for the limited purpose of effectuating the Settlement Agreement. *Id.* § 3.1.

For the following reasons, all prerequisites are met to certify a Rule 23(b)(3) damages class for the purposes of approving the Settlement Agreement.

### A. Rule 23(a)(1) numerosity is met.

"Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members." *Stephens*, 329 F.R.D. at 483 (quotation omitted). Here, BPM has provided Class Counsel with a preliminary analysis of BPM records, which indicates that the total number of Class Members is 2,431. Joint Decl. ¶ 19. Thus, numerosity is readily met in this case.

**B. Rule 23(a)(2) commonality is met.**

"'The commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members,' such that 'factual variations among the class members will not defeat the commonality requirement, so long as a single aspect or feature of the claim is common to all proposed class members.'" *Alvarez*, 303 F.R.D. at 160-61 (quoting *Cohen v. Chilcott*, 522 F. Supp. 2d 105, 113 (D.D.C. 2007)).

Here, all the CPPA claims asserted in this case involve common questions of law because BPM's liability largely turns on questions of statutory interpretation. The Drip-Pricing Claim turns on whether allegedly undisclosed Fees fall within the RHA's statutory definition of "rent." D.C. Code § 42-3501.01(28). The Common Area Electric / Trash Claim turns on whether the D.C. Housing Code's requirement that a landlord "furnish" utilities within the landlord's control requires landlords to pay for such utilities. D.C.M.R. § 14-600.3. The Service Fee Claim turns on whether the monthly billing fees are "services required of the housing provider to maintain a unit in a condition consistent with the implied warranty of habitability and [the housing code]." D.C. Code § 42-3505.10(b-2)(1). And the Holding Deposit Claim turns on whether a holding deposit charged before an application is approved is valid under the RHA's definition that a holding deposit is one charged "after a housing provider approves a tenant's application." D.C. Code § 42-3501.01(13A). The facts are also common, as there is no serious dispute that certain Fees were not disclosed on rental applications used for Class Members, nor is there any dispute that Class Members were charged certain Fees.

As liability in this case turns on statutory interpretation, commonality is satisfied because the court's resolution of the meaning of the statutes-at-issue will apply across the class. *See, e.g. Zhang v. U.S. Citizenship & Immigration Servs.*, 344 F. Supp. 3d 32, 63 (D.D.C. 2018)

(commonality satisfied where challenged governmental interpretation of a statute presented a "uniform policy or practice that affects all class members.") (citation omitted); *Gur-Ravantab*, 2025 U.S. Dist. LEXIS 43970, at *7 (commonality satisfied where class claims involved interpretation of "identical contracts").

That commonality is met is further supported by *Hettinger v. Bozzuto Management Company, LLC,* in which Chief Judge Boasberg certified two classes of tenants over the defendant's opposition in case asserting similar claims against their housing provider. *Hettinger v. Bozzuto Mgmt. Co.*, CV 23-3687 (JEB), 2026 U.S. Dist. LEXIS 157031 (D.D.C. July 15, 2026).

**C. Rule 23(a)(3) typicality is met.**

The typicality requirement states that 'the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class.'" *Alvarez*, 303 F.R.D. at 161 (quoting Fed. R. Civ. P. 23(a)(3)). While typicality overlaps with commonality, "the commonality inquiry focuses on what characteristics are shared among the whole class while the typicality inquiry focuses on the desired attributes of the class representative." *Id.* (quoting Newberg on Class Actions § 3:31 (5th ed. 2013)). Typicality "is satisfied if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability." *Id.* (quoting *Pigford v. Glickman*, 182 F.R.D. 341, 349 (D.D.C. 1998)).

Typicality is satisfied here because Mr. Propst's claims arise from the same course of events as Class Members. He filed a rental application with BPM that did not disclose certain Fees, and he was charged and paid the Common Area Electric, Trash, Service Fee, and Holding Deposit specifically challenged in this suit. Joint Decl. ¶¶ 11-13. As Mr. Propst's claims and injury turn on

the "same conduct as the alleged injury to the rest of the class," typicality is met. *Alvarez*, 303 F.R.D. at 161.

**D. Rule 23(a)(4) adequacy is met.**

Adequacy requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy requirement is satisfied upon a showing that (1) there is no conflict of interest between the proposed class representative and other members of the class, and (2) the proposed class representative will vigorously prosecute the interests of the class through qualified counsel." *Alvarez*, 303 F.R.D. at 161 (quotation omitted).

Here, there is no conflict of interest between Mr. Propst and Class Members. In addition, the Settlement Agreement's two-tier payout structure treats similarly situated class members consistently through the use of a common formula, which further supports the lack of any conflicts of interest. *See Alvarez*, 303 F.R.D. at 161 (that class members were paid according to the "same formula" demonstrated there was no conflict of interest); *Hettinger*, 2026 U.S. Dist. LEXIS 157031, at *32 (finding that plaintiff was adequate because "the class members all suffered the same alleged injury — violation of their statutory right to notice of their full rental price — and seek the same remedy — money damages."). As to the second factor, Mr. Propst has vigorously prosecuted this case as a lone class representative, expending time and effort to provide Class Counsel with evidence to support his claims. Adequacy is thus satisfied in this case. *See Howard v. Liquidity Servs.*, 322 F.R.D. 103, 135 (D.D.C. 2017) ("[O]nly a total lack of interest and unfamiliarity with the suit would be sufficient grounds to deny plaintiffs' motion to certify class [on adequacy grounds]."); *Hettinger*, 2026 U.S. Dist. LEXIS 157031, at *30 (finding that Tycko & Zavareei and Migliaccio & Rathod "would suitably represent the class as its counsel" and appointing them class counsel).

**E. Rule 23(b)(3) predominance is met.**

Predominance requires that the "questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "Predominance is met when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member['s] individual position." *Alvarez*, 303 F.R.D. at 162 (citation omitted). "[C]ommon liability issues are typically far more important" in evaluating predominance." *Coleman v. Dist. of Columbia*, 306 F.R.D. 68, 85 (D.D.C. 2015). This is because "the mere fact that damage awards will ultimately require individualized fact determinations is insufficient by itself to preclude class certification." *McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984).

Here, predominance is met because, as set out in Section VI(B), *infra*, the primary liability questions all turn on statutory interpretation—where the court's resolution of the statute-at-issue will produce a common answer as to BPM's liability that applies classwide. In addition, common questions of fact also predominate. For example, Plaintiff's Drip-Pricing Claim turns on his allegation that BPM's application form only disclosed the "Base Rent" and no other Fees to prospective tenants, providing a common omission that supports a finding of predominance. *See Wells v. Allstate Ins. Co.*, 210 F.R.D. 1, 12 (D.D.C. 2002) (certifying CPPA claim predicated on a common omission where a defendant "fail[ed] to disclose material changes to its claims handling procedures").

**F. Rule 23(b)(3) superiority is met.**

Superiority requires a finding that the class action device is "superior to other available methods of fairly and efficiently adjudicating the controversy," and requires the court to examine the following factors: "(A) the class members' interests in individually controlling the prosecution

. . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). "The purpose of the superiority requirement is to ensure [] that resolution by class action will achieve economies of time, effort, and expense as well as promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences." *Alvarez*, 303 F.R.D. at 162 (quotation omitted). For the following reasons, each of these factors is satisfied.

First, the relatively small size of each Class Members' damages recovery supports a finding that the class action device is superior to the unlikely event Class Members individually pursue their claims. *See Wells*, 210 F.R.D. at 13 (superiority satisfied because the "separate litigation of the individual claims, each involving, at most, a few thousand dollars, would be wasteful and unnecessary [because] the major issues can be resolved in a single proceeding") (quotation omitted); *see also Amchem Prods v. Windsor*, 521 U.S. 591, 617 (1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Second, Class counsel is aware of no other litigation against BPM regarding the claims asserted in this case. Third, it is desirable to concentrate the litigation of these claims in this forum because the claims-at-issue are specific to D.C. statutes and their applicability to a class defined specifically to cover D.C. tenants of BPM. Fourth, there are no difficulties in managing the approval and execution of the class Settlement Agreement, as BPM maintains detailed records regarding the contact information of its tenants, which will facilitate an orderly distribution of Class Member awards. In addition, the retention of the Administrator further ensures that processes

related to award distribution and fielding Class Member responses to the Settlement Agreement will be handled in an orderly and administratively feasible manner.

## VII. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Fed. R. Civ. P. 23(g) requires a court to appoint class counsel. In appointing class counsel, the Court "must" consider:

a. the work counsel has done in identifying or investigating potential claims in the action;

b. counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

c. counsel's knowledge of the applicable law; and

d. the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A); *see Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 54 (D.D.C. 2010) (applying 23(g) factors). The court "may" also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Each of these factors supports the appointment of Tycko & Zavareei LLP and Migliaccio & Rathod LLP as Class Counsel.

Proposed Class Counsel expended a great deal of time, effort and expense investigating the Defendant's documents, practices, and actions prior to and since filing this action. Proposed Class Counsel have committed, and will continue to commit, the resources necessary to represent the Class, having prosecuted this action on a contingent basis for over a year and a half and undertaken the work of negotiating, documenting, and administering the Settlement. In prosecuting this action, proposed Class Counsel conducted an extensive pre-suit investigation—speaking with dozens of BPM tenants—developed the CPPA theories at issue, drafted and prosecuted the Complaint,

opposed BPM's Motion to Dismiss and Motion to Strike Class Allegations, and conducted informal and confirmatory discovery into the Fees charged to Class Members. Joint Decl. ¶¶ 13-18, 35. Moreover, proposed Class Counsel are highly experienced in class actions challenging improper business practices through class action litigation. Joint Decl. ¶¶ 28-34. In particular, proposed Class Counsel have experience prosecuting the types of consumer-protection and tenant claims asserted here and were just appointed class counsel in *Hettinger*. Joint Decl. ¶ 28-34. Courts in this District have found the Rule 23(g) standard satisfied on comparable showings. *See Bynum v. D.C.*, 412 F. Supp. 2d 73, 78 (D.D.C. 2006) (appointing class counsel under Rule 23(g) where counsel had performed extensive investigative work and were "competent to represent the members of the class.").

Accordingly, the appointment of Tycko & Zavareei LLP and Migliaccio & Rathod LLP as Class Counsel under Rule 23(g) is warranted.

## VIII. <u>THE PROPOSED NOTICE PLAN SHOULD BE APPROVED.</u>

The proposed Notice Plan is designed to reach as many Class Members as possible and is the best notice practicable under the circumstances. Courts have considerable discretion in approving an appropriate notice plan. *See Manual for Complex Litig.* § 21.311 ("Determination of whether a given notification is reasonable under the circumstances of the case is discretionary."). The manner in which these Class Notices are disseminated, as well as their content, must satisfy Rule 23(c)(2) (governing class certification notice), Rule 23(e)(1) (governing settlement notice), and procedural due process. *See In re Domestic Airline Travel Antitrust Litig.*, 322 F. Supp. 3d 64, 68 (D.D.C. 2018). Due process does not require actual notice to every class member; it requires only that notice be reasonably calculated to reach the class, and notice is adequate where it fairly apprises class members of the terms of the proposed settlement and of the options open to them.

*Id.*; *see also Rogers,* 2020 U.S. Dist. LEXIS 108259, at *9. The proposed Notice Plan meets these standards.

**A. The Notice Plan will provide notice to the vast majority of Class Members.**

The parties have selected Kroll Settlement Administration LLC ("Kroll" or "Settlement Administrator") as the settlement administrator. Kroll is qualified and experienced in administrating class action settlements, having provided services in over 3,000 settlements. Declaration of Brianne A. Nelson ("Nelson Decl.") ¶ 2.

Within 14 days of preliminary approval, BPM shall provide the Settlement Administrator and Class Counsel with an updated spreadsheet containing the names, last known physical mailing addresses, and last known email addresses of the Class Members, according to its business records. The Settlement Administrator will do a reverse lookup for each Class Member in an effort to confirm their current email and mailing address. Nelson Decl. ¶¶ 4-5. The Settlement Administrator will promptly, but in no event later than twenty-one (21) days after entry of the Preliminary Approval Order, provide each potential Class Member direct notice at his or her last known email address and mailing address. *Id.* ¶¶ 7–16; Joint Decl. Ex. 2, Long Form Notice; Joint Decl. Ex. 3, Postcard Notice. Kroll will track and monitor emails that are rejected or "bounced back" as undeliverable. Nelson Decl. ¶ 10. Kroll will provide a report with the email delivery status of each record. The report will include the number of records that had a successful Email Notice delivery, and a count of the records where delivery failed. Kroll will also update its administration database with the appropriate status of the email campaign for each of the Class Member records. *Id.*

In preparation of Postcard Notice mailing, Kroll will send the Class Member data through the United States Postal Service's ("USPS") National Change of Address ("NCOA") database.

The NCOA process will provide updated addresses for Class Members who have submitted a change of address with the USPS in the last 48 months, and the process will also standardize the addresses for mailing. Kroll will then prepare a mail file of Class Members that are to receive the postcard notice via first-class mail. *Id.* ¶ 13. Any Postcard Notices returned as undeliverable, but with a forwarding address, shall be promptly re-mailed to the forwarding address. Nelson Decl. ¶ 14. Any postcard notice returned by the USPS undeliverable and without a forwarding address will be sent through an advanced address search process in an effort to find a more current address for the record. If an updated address is obtained through the advanced search process, Kroll will re-mail the postcard notice to the updated address. *Id.* ¶ 15.

Prior to administering the Email Notice and Postcard Notice, the Settlement Administrator shall create a Settlement Website. Settlement Agreement § 6.1. Class Counsel will ensure that the Settlement Website contains: (1) the Long Form Notice, which Class Counsel will request be made available in HTML format with a clickable table of contents and which will at minimum be available as a downloadable PDF; (2) contact information for the Settlement Administrator, and addresses and telephone numbers for Class Counsel and BPM's Counsel; (3) the Settlement Agreement; (4) the signed Preliminary Approval Order and publicly filed motion papers and declarations in support thereof; (5) the operative complaints; and (6) when they become available, the Fee and Service Award Application, the motion for entry of the Final Approval Order, and any motion papers and declarations filed publicly in support thereof. Nelson Decl. ¶ 17. The Settlement Website shall remain accessible until one year after the Effective Date, or, if the Settlement is terminated or otherwise not approved in full, thirty (30) days after the date on which the Settlement Agreement is terminated or otherwise not approved in full. Nelson Decl. ¶ 18.

The content of the Class Notice is also sufficient. The proposed notices here were drafted using the Impact Fund's class action notice template, which has been approved by several federal courts including this one. *See, e.g.*, *Bird v. Garland*, No. 1:19-cv-1581 (JMC) (D.D.C. Oct. 16, 2024) (approving notice plan based on Impact Fund's template); *Geiser v. The Salvation Army,* No. 1:22-cv-1968 (S.D.N.Y. May 10, 2023) (same); *Forsyth. v. HP Inc.*, No. 5:16-cv-04775-EJD (N.D. Cal. Nov. 3, 2023) (same). The Class Notices are designed to ensure that the vast majority of Class Members will understand their contents.

The Long Form Notice will inform each Class Member of the nature of the action, the definition of the Settlement Class, the material terms of the Settlement (including the monetary and injunctive relief and the scope of the release), the binding effect of the Settlement, Class Counsel's intent to seek attorneys' fees and a Service Award, and each Class Member's rights to opt out of or object to the Settlement. Settlement Agreement § 6.3; Joint Decl. Ex. 2. This information "fairly apprise[s]" Class Members of the terms of the Settlement and their options, as due process requires. *In re Domestic Airline Travel*, 322 F. Supp. 3d at 68. The Long Form Notice will use text and/or graphics to communicate information to Class Members clearly and concisely, such as decision trees or tables.

Based upon information provided, Kroll estimates an average undeliverable rate of no more than 9% and thus projects direct notice will likely reach 90% of the likely proposed Class Members. Nelson Decl. ¶ 16.

**B. The Notice Plan provides Class Members with the opportunity to opt out or object.**

The notice plan also affords Class Members a fair opportunity to exclude themselves or object. A Class Member may opt out by submitting a signed request for exclusion—online through the Settlement Website or by mail—containing the information specified in the Settlement

Agreement, on an individual basis, by the Opt-Out and Objection Date. Settlement Agreement § 6.4; Joint Decl. Ex. 4, Opt-Out Form. The Opt-Out and Objection Date will be set forty-five days after Class Counsel file and post their motion for an Attorneys' Fees Award, ensuring that Class Members may review the fee request before deciding whether to opt out or object. *Id.* § 6.4(a).

The Settlement Administrator shall be responsible for reviewing all Opt-Out Notices to determine their validity. This review shall include ensuring that any Opt-Out Notice is substantially in compliance with the terms of the Settlement Agreement and is post-marked or submitted online no later than the Opt-Out and Objection Date set by the Court in the Preliminary Approval Order. Settlement Agreement § 6.5(a). The Settlement Administrator shall provide Class Counsel and BPM's counsel with a list of all Opt-Out Members within seven (7) days of the Opt-Out and Objection Date. *Id.* § 6.5(b).

Any Class Member may object or comment by filing and serving a written objection meeting the requirements set out in the Settlement Agreement, which will be provided to Class Members as part of the Notice program. *Id.* §§ 6.3, 7.2. These requirements include that any Class Member may comment in support of or in opposition to the Settlement and may do so in writing, in person, or through counsel, at his or her own expense, at the Fairness Hearing. Except as the District Court may order otherwise, no Class Member objecting to the Settlement shall be heard and no papers, briefs, pleadings, or other documents submitted by any such Class Member shall be received or considered by the District Court unless such Class Member files with the District Court and mails to Class Counsel and BPM's counsel a written objection with the caption *Norman Propst v. Brookfield Properties Multifamily, LLC*, No. 1:25-cv- 00636-GMH (D.D.C.), that includes: (a) the Class Member's name, address, and telephone number; (b) a signed statement that he or she is a Class Member; (c) the grounds for the objection to the Settlement; (d) a notice of

intention to appear (if any) that lists the name, address, and telephone number of the attorney, if any, who will appear; and (e) the captions of all other class action settlements to which that Class Member has previously objected. All written objections shall be filed and post-marked on or before the Opt-Out and Objection Date.

**C. CAFA Notice**

The Settlement Administrator will issue the notice required by the Class Action Fairness Act, 28 U.S.C. § 1715, no later than ten (10) days after this motion is filed. Settlement Agreement § 6.2.

***

Because the proposed Notice Plan provides the best notice practicable under the circumstances, is reasonably calculated to reach substantially all Class Members, and fairly apprises them of the Settlement and their rights, it satisfies Rule 23 and due process and should be approved. The Court should also approve the Parties' selection of the Settlement Administrator and the form of Class Notice submitted with the proposed Preliminary Approval Order. *Id.* §§ 6.1, 7.1.

## IX. PROPOSED SCHEDULE

Plaintiff proposes the following schedule for the remainder of the case:

| **EVENT** | **DEADLINE** |
|---|---|
| BPM to provide updated Class List to Administrator | 14 Days after entry of the Preliminary Approval Order |
| Notice to be sent by Email Notice and Postcard Notice | 21 days from the Preliminary Approval Order |
| Deadline to file Application for Attorneys' Fees, Expenses, and Service Award | 60 days from Preliminary Approval Order |
| Opt-Out and Objection Deadline | 105 days from Preliminary Approval Order |

| | |
|---|---|
| Settlement Administrator to provide Class Counsel and BPM's Counsel with a list of opt-outs | 7 days from Opt-Out and Objection Deadline |
| Deadline to file Motion for Final Approval | 21 days before Final Approval Hearing |
| Deadline for the Parties to Respond to any Objections | 21 days before Final Approval Hearing |
| Final Approval Hearing | 140 days from Preliminary Approval Order |

## X. CONCLUSION

For these reasons, Plaintiff requests that the Court (1) preliminarily approve the proposed Settlement, (2) conditionally certify the Settlement Class, (3) appoint Norman Propst as Settlement Class Representative, (4) appoint the law firms of Tycko & Zavareei LLP and Migliaccio & Rathod LLP as Class Counsel, (5) appoint Kroll Settlement Administrator, LLC as Settlement Administrator, (6) order the Notice of the Settlement be made to the Settlement Class, and (7) set a Final Approval Hearing no earlier than 140 days from the date of the Preliminary Approval Order.

Date: Tuesday, August 26, 2026

Respectfully submitted,

*/s/ F. Peter Silva II*

F. Peter Silva II (DC Bar No. 1010483)
Hassan A. Zavareei (DC Bar No. 456161)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Ave., NW, Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
psilva@tzlegal.com
hzavareei@tzlegal.com

Randolph T. Chen (DC Bar No. 1032644)
Jason S. Rathod (DC Bar No. 100082)
Nicholas A. Migliaccio (DC Bar No. 484366)

**MIGLIACCIO & RATHOD LLP**
412 H Street NE
Washington DC 20002
Office: (202) 470-3520
Fax: (202) 800-2730
rchen@classlawdc.com
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

*Counsel for Plaintiff Norman Propst and the Proposed Settlement Class*